J. W. GRIFFIN ET ALS. v. BOARD OF COMMISSIONERS OF MOSELEY CREEK DRAINAGE DISTRICT.

(Filed 13 October, 1915.)

**1. Drainage Districts—Interpretation of Statutes—Water and Water-Courses —Reports of Viewers—Conformity—Drainage Commissioners.**

Where a drainage district has been laid out in accordance with the requirements of the Drainage Act, and the final report has been filed and recorded, provision is made for the selection of a board of drainage commissioners, etc., who are charged with the duties of carrying out, substantially, the plans and specifications of the report as recorded, their powers being largely ministerial in character, to make out the assessment rolls constituting a lien on the property, as in case of tax lists, ob-

serving the classifications and ratio of assessments determined upon by
the board of viewers; and the modification made by section 4 of the act
contemplates only such minor charges of detail as may occur in carrying
out the plans, etc., specified in the final report, and not a substantial
departure therefrom.

**2. Same—Courts—Rights of Landowners—Laches.**

The courts, in proper instances, have the power to interfere and stay
amounts assessed against the owner of lands within an established drain-
age district, when it appears that the commissioners, in carrying out the
ministerial duties imposed on them, endeavor to collect from him a sum
in excess of their own assessment, or that they had made out these rolls
in utter disregard to the classifications and ratio of assessments estab-
lished by the final report, or they had made such changes in the plans and
specifications thereof as to exceed their powers and work substantial
wrong and hardship upon a landowner, if he is not guilty of laches and
has not unduly delayed asserting his rights.

**3. Drainage Districts—Interpretation of Statutes—Reports—Objections—
Landowners—Expectations.**

Where a drainage district has been duly laid off in conformity with the
statute, and a landowner therein has not excepted to either the prelimi-
nary or final report, he may not after the appointment of the commission-
ers, be heard to complain that the benefits he is to receive are not as
great as those he had contemplated.

**4. Same—Bond Issues—Injunction—Rights Against Commissioners.**

Where a drainage district has been fully and lawfully established in
accordance with the statute, and the commissioners duly appointed and
bonds issued in furtherance of the scheme, an injunction restraining the
collection of the assessment against the landowners therein, at the suit
of one of them, will not issue, as against the interest of the holder of
the bonds, unless it clearly appears that the commissioners have substan-
tially departed, to the injury of the claimant, from the scheme set forth
in the final report of the viewers, etc.; and it appearing in this case that
such has not been done, the restraining order is properly dissolved, and
the further order that the plaintiff may proceed in his action against the
commissioners is approved.

**5. Drainage Districts—Interpretation of Statutes—Reports—Record—Notice
—Objections—Laches.**

Upon the filing of the final report by the viewers, etc., in a proceeding
to establish a drainage district under the provisions of the statute, a
record is required by the statute to be kept in a book for the purpose,
giving all interested in the proceedings notice of all that has been done
materially affecting them; and when they have failed to make objection
within three years, *semble*, they have lost their right to object, by the
delay.

APPEAL by plaintiffs from *Connor, J.,* at the April Term, 1915, of
CRAVEN.

Civil action, heard on motion to dissolve a preliminary restraining
order.

The action was to compel commissioners of drainage district to com-
plete and carry out the scheme of drainage so as to afford the benefits
to plaintiffs' land as contemplated in the establishment of the district
and, in the meantime, to restrain the collection of the assessment laid

by the drainage commissioners to pay the accumulated interest on the bonds issued for cost and maintenance, etc.

On the hearing it was made to appear that the district had been established on petition regularly filed; that preliminary and final reports had been approved; drainage commissioners appointed; bonds to the amount of $45,000 issued; an assessment made to pay the accumulated interest thereon, which the commissioners were proceeding to have collected for the purpose, as provided by the statute, etc.

There was evidence, also, on the part of plaintiffs that, in carrying out the scheme of drainage provided for, the commissioners had failed to extend the same so as to afford any benefit to plaintiffs' land, and further, they made some alterations in one of the lateral ditches, and allowed one R. A. Richardson to maintain a dam on his lands lying adjacent to and below the lands of plaintiffs, thus preventing a proper drainage of plaintiffs' lands, contrary to the scheme and plan adopted and contained in the final report of the viewers and confirmed by the court.

To these allegations defendants offered affidavits making averment that the commissioners were carrying out the plans as contemplated and provided for in the report of the board of viewers.

Further, that no alterations were made in the canal as established, except to make same more efficient, and these fully within the discretionary powers conferred upon them by the law, and any minor changes made by them they had acted on their best judgment and under the advice and direction of a competent engineer, and that they thereby increased the efficiency of the general plan and afforded better drainage to the lands and without increasing the cost and estimates shown on the final reports.

His Honor, on consideration of the facts in evidence, entered judgment dissolving the restraining order "for the purposes of suffering and permitting the collection of the assessments, and continued the cause for such other and further relief as the plaintiffs may show themselves entitled to."

Plaintiffs excepted and appealed.

*Moore & Dunn, G. V. Cowper for plaintiffs.*
*Guion & Guion for defendants.*

HOKE, J., after stating the case: There have been several of the more recent decisions of the Court upholding the validity of these drainage laws, chapter 67, Laws 1911; chapter 442, Laws 1909, and chapter 88, Revisal of 1905, and dealing to some extent with the effect and procedure under them. *Drainage Commissioners v. Farm Association,* 165 N. C., p. 697; *Drainage Commissioners v. Engineering Co.,* 165 N. C., p. 37; *Shelton v. White,* 163 N. C., p. 90; *Newby v. Drainage District,*

163 N. C., p. 24; *In re Drainage District,* 162 N. C., p. 127; *White v. Lane,* 153 N. C., p. 14; *Sanderlin v. Luken,* 152 N. C., p. 739.

From a perusal of these cases on the procedure required for the proper formation of the district, notably that of *Shelton v. White, supra,* it will appear that the proceedings may be instituted by a majority in number or by the owners of three-fifths of the land in a given area, and on their petition filed before the clerk a board of viewers shall be appointed, to consist of two resident freeholders of the county, and a competent civil and drainage engineer, this last to be on the recommendation of the State Geologist, who shall go upon the land, make careful examination of the same, and report on the general feasibility of the scheme, etc. On the coming in of this report and the settlement of objections thereto, for making of which notice and opportunity is provided, if the scheme is approved, the drainage district is established and the board of viewers are then directed to make a second and more extended report, based on a complete survey of the land, marking out the course of the main and all lateral ditches, levees, etc., giving a description of each owner's land, etc., etc., and they shall file with this report a drainage map of the district, showing "the location of the ditch or ditches and other improvements, and the boundary, as closely as may be determined by the records of the lands owned by each individual landowner within the district. The location of any railroads or public highways, and the boundary of any incorporated towns or villages within the district, shall be shown on the map. There shall be also prepared to accompany this map a profile of each levee, drain or water-course, showing the surface of the ground, the bottom or grade of the proposed improvement, and the number of cubic yards of excavation or fill in each mile or fraction thereof, and the total yards in the proposed improvement and the estimated cost thereof, and plans and specifications, and the cost of any other work required to be done." Laws 1909, ch. 224, sec. 10.

The second report shall also contain a classification of the lands and a rate of assessment for the same, as directed in section 12 of the act.

On the coming in of this second report, notice and opportunity for objection is again provided for, and, when the objections have been adjusted and settled pursuant to the law, the proceedings are all recorded in a special book, called the drainage record, and the maps thereof filed in the office and one of these pasted or otherwise attached to the record book, thus giving to every one interested full opportunity to observe and note in detail the scheme and plans for carrying out the undertaking.

It may be well to note, also, that in *Shelton v. White, supra,* it was held, that while the individual or minority landowner could present his

objection and have the matter determined in respect to either the pre-
liminary or completed report, the issue as to him is confined to the effect
upon his own land, and if the material question involved is decided in
his favor, and it is found that his land was in no wise benefited, the
court has the power either to exclude his land from the drainage dis-
trict or, if it was found necessary to retain it in order to the success
of the scheme, it could be retained and the owner compensated in dam-
ages for any injury done, ample provision being made in the law for
such a course (Laws 1909, sec. 11) ; and further, that a majority in num-
ber of the landowners or three-fifths in the amount of land, could, even
to the second report, by their exceptions, taken in apt time, raise and
maintain objections to the validity of the entire scheme.

When the final report is filed and recorded provision is made for the
selection of a board of drainage commissioners, and for the appointment
of a superintendent of construction, and from a careful perusal of the
statute it will appear that these officers are charged with the duty of
carrying out, substantially, the plans and specifications of the report
as recorded, and that their powers in the premises are largely ministe-
rial in character.  They make out the assessment rolls, which are con-
stituted a lien on the property, as in case of tax lists, observing the
classification and ratio of assessment determined upon by the board of
viewers..

True, under the provision of section 4 of the act the drainage com-
missioners are given "power to correct errors and modify the report of
the details of the report of the engineer and viewer if, in their judg-
ment, they can increase the efficiency of the drainage plan and afford
better drainage to the lands of the district without increasing the esti-
mated cost submitted by the engineer and viewers and confirmed by the
court," but this modification of the former law only contemplates such
minor changes of "detail" as not infrequently occur in the practical
carrying out of plans which have been indicated in a careful survey,
and does not, as stated, and was not intended to authorize substantial de-
parture from the plans as contained in the final report of the board of
viewers.

The careful and minute provisions of the statute in reference to the
final report, requiring that the course of the main and all lateral canals
and ditches shall be carefully marked out, the boundaries of the lands
given, the levels ascertained and stated, and both surface and profile
maps made and recorded, and the restricted terms in which the power
to alter it is given to the drainage board to "correct errors and modify
details," affords convincing evidence that, by correct interpretation,
this final report of the board of viewers is the controlling chart by which
the drainage commissioners are to be guided in constructing the work

and making out the assessment rolls under the law. And if, in a suit of this character, it should be clearly made to appear that the commissioners of drainage, in carrying out the ministerial duties imposed upon them, should endeavor to collect of the landowners sums in excess of their own assessment, or that they had made out these rolls in utter disregard of the classification and ratio of assessment established by the report, or that they had made such changes in the plans and specifications of the final report as to exceed their powers in the premises and work substantial wrong and hardship upon the individual members of the district, in either case, the complainant being free from laches or undue delay, the court would have the right to interfere and stay the collection of the amounts until a proper assessment could be established. But, when the commissioners, adhering substantially to the plans and specifications of the report, have made assessments contemplated and authorized by the law, then collection should not be stayed because the scheme has not afforded to a landowner the drainage he had anticipated. That was a question that was settled at the time the report was adopted and the district established, and may not be again questioned in a proceeding of this character. Nor will the creditor be hindered in the present collection of his debt, otherwise properly assessed, because the drainage commissioners, in breach of these duties under the law, have failed to do their work efficiently or to properly open and construct the drains, since a default of that kind must be corrected by proper action between the members and the commissioners, a course still open to plaintiff on the record, if the necessary facts are ultimately established.

This being, to our mind, the proper construction of our drainage statutes, and it is in accord with decisions on the subject here and elsewhere interpreting laws of similar import, *Newby v. Commissioners,* 163 N. C., *supra; White v. Lane,* 153 N. C., p. 14; *Hartwell Drainage District v. Mickelberry,* 257 Ill., 509; *Kelly, Exr., v. Drainage District,* 157 Iowa, 735; *Fardell Drainage District v. Board of Supervisors,* 157 Iowa, 590, we are of opinion that the court below made correct decision in dissolving the injunction order restraining collection of the assessments and leaving the action to proceed as between the landowners, plaintiffs, and the drainage commissioners. In the present case the plaintiffs base their right to relief:

1. On the ground that the drainage commissioners have not properly carried out the drainage scheme, and that the work done has afforded plaintiffs' land no substantial benefit.

2. That they have made departure from the plans and specifications of the board of viewers, to plaintiffs' injury.

As we have endeavored to show, the first ground may not be asserted against regular assessment to pay the bondholders. And, on careful

consideration of the pleadings and affidavits, we are unable to discover that the drainage commissioners have made such substantial departure from the plans and specifications of the board of viewers as to render their assessment void. Apart from this, it appears that the assessments which the commissioners are now seeking to collect, purporting to be in pursuance of authority vested in them by law and the terms of the decrees in the cause have been made and filed with the clerk of the Superior Court since 1911, and that no legal objection has been made thereto by plaintiffs or any one else until the commencement of the present suit in 1914, and it would seem that plaintiffs have thereby waived the right to object to the assessments in so far as the creditor is concerned.

We find no error in the judgment of the court, and the same is in all respects

Affirmed.