R. C. BANKS AND WIFE v. R. B. LANE, SHERIFF, ET ALS.

(Filed 10 May, 1916.)

**Drainage Districts—Process—Injunction—Different County—Motions—Notice.**
    Where a drainage district has been established under a valid
    statute, an injunction against the assessment provided for may not
    successfully be prosecuted in an independent action by the owner of
    the land in the district, on the ground that the statutory notice had
    not been given him, the remedy being by motion in the proceedings
    instituted in the county for the formation of said district wherein
    are the records and where a proper reassessment may be had if the same
    should be lawfully required; and the plaintiff may obtain his restrain-
    ing order in those proceedings if he is entitled thereto. *Semble*, notice
    of the motion should be served on the owners of land in the district as
    required by the statute.

WALKER and BROWN, JJ., concurring; ALLEN, J., dissenting.

*Loftin, Dawson & Manning for plaintiffs.*
*Guion & Guion for defendants.*

CLARK, C. J. This is a petition to rehear this case, 170 N. C., 14.
The action was brought by R. C. Banks and wife, the *feme* plaintiff
being the mortgagee of a tract of land embraced in the "Mosely Creek
Drainage District," against George B. Lane, the sheriff of Craven
County, and George B. Pate, the mortgagor and owner of said tract of
land, who was in possession, and the Mosely Creek Drainage District.

The *feme* plaintiff set out her chain of title down to August, 1913,
when she conveyed to George B. Pate and took from him a mortgage
back to secure the purchase money. Her complaint averred that she
and those under whom she claims had no notice served on her per-
sonally of the proceedings for the assessment made in said drainage
district; that said George B. Pate was insolvent, and asked a restrain-
ing order against the collection of said assessment.

It is very evident that by the expression, "those under whom she
claims," the *feme* plaintiff refers to the grantors in the deeds set out
in her chain of title, and not to George B. Pate. The answer does not
deny, but asserts, that the latter, who is in possession, has been served
with summons in the cause. In our former decision we called atten-
tion to the fact that the statute did not require that mortgagees and
lien-holders by judgment or otherwise should be served with summons;
that to require them to be parties would greatly increase the difficulty
of creating these drainage districts, and they would have no interest
to serve in the creation thereof. As was said in *Drainage Comrs. v.
Farm Assn.*, 165 N. C., 701, where the point was presented, mort-
gagees and lien-holders are not required to be served with notice per-

sonally, because "A mortgage is subject to the authority to form these drainage districts for the betterment of the lands embraced therein. The statute is based upon the idea that such drainage districts will enhance the value of the lands embraced therein to a greater extent than the burden incurred by the issuing of the bonds, and the mortgagee accepted the mortgage knowing that this was the declared public policy of the State."

In our former opinion we held that it was no more necessary that mortgagees and other lien-holders should be consulted in the formation of such districts than to permit a mortgagee or lien-holder, in the like absence of statutory provision, to enjoin an assessment for the pavement of sidewalks or streets or other improvements of property. We said that the proceeding was *in rem,* and that the decree for the formation of the district could not be made until a majority of the original landowners, and the owners of three-fifths of all the land which will be affected, have signed the petition, and until all other landowners in the district are notified, and that the decree creating the district must be presumed to have been regularly granted and advertisement of notice for other persons interested in the land has been made as required by secs. 5 and 15, chapter 442, Laws 1909, and sec. 1, chapter 67, Laws 1911. The complaint does not aver that the plaintiff is the owner of the land, but, on the contrary, that George B. Pate is the owner and in possession, and does not negative that notice by publication was duly made as to all others in interest, but merely avers that the *feme* plaintiff was not served personally—which is not necessary.

The Drainage Act has been held constitutional, and the validity of the district laid off under it cannot be attacked collaterally. *Newby v. Drainage District,* 163 N. C., 24.

The district has been formed, the assessment made without objection from landowners, and Laws 1909, chapter 442, sec. 37, provides that the collection of assessments shall not be defeated, where the proper notices have been given, by reason of any defects occurring prior to the order confirming the final report, but that such report shall be conclusive that all prior proceedings were regular, unless appealed from. This is absolutely necessary if the public are to be protected in their purchase of the bonds put upon the market. It is to be presumed that when the Court has rendered such final judgment and the bonds are issued there will be no interference with the collection of the assessments to pay the bondholders, but that all controversies were thrashed out and settled before such final judgment.

Though the proceeding to create the drainage district was instituted before the plaintiff executed her deed to Pate in August, 1913, yet it

may well be that the summons, as the answer avers, was served on him after that date and before the final judgment making the assessments and directing the issue of the bonds. This is another reason why the motion should be made in that cause where the facts in regard to the proceedings are of record.

If the plaintiff wishes to allege collusion between the owner of the land, Pate, and the other members of the drainage district, which she has not done, she ought to be allowed a day in court to do this. But she cannot do it in this collateral way under a restraining order against the sheriff of the county, who has no interest, but was obeying a legal mandate of the court, for the statute puts these assessments upon the same basis as the levy of taxes. She must seek her remedy by a motion in the cause in which the judgments were entered creating the district and confirming the assessment and directing the issue of bonds. In that proceeding are the records which will show whether the publication was made of notices required as to others than the owners of the land (which last alone were required to be served with summons), and whether there was any fraud or collusion to her detriment.

On such motion being made before the clerk in that cause, the plaintiff can, if so advised, at once apply to the judge to issue a restraining order therein until her motion shall be passed upon, and if an issue of fact is raised, this issue can be transferred to the court at term for trial by a jury.

The counsel for the plaintiff seem to be aware that the records in that case were necessary, for they have applied on this rehearing for a *certiorari* to send up the records in that case. This motion we have refused because that proceeding was no part of this case, and, indeed, the records therein were not before us on hearing the appeal whose decision it is now sought to rehear. The authorities are numerous that an injunction will not lie against an execution by an independent action, but that the remedy is always by motion in the cause whose decrees it is sought to impeach (except where fraud is alleged), and by a restraining order in that cause, if necessary. *Parker v. Bledsoe,* 87 N. C., 221, and cases there cited, and cases since, citing that case. The records to be passed upon are in that cause, and should not be brought into another case for examination collaterally.

The plaintiff, therefore, has a remedy by proceeding regularly under a motion in that cause and by a restraining order therein if necessary. This will entail no disadvantage or delay upon her, for the present injunction will hold until this opinion is certified down to the court below, which will then dismiss this action. In the meantime, the plaintiff can make her motion and application for a restraining order in that cause.

Besides, this proceeding would be an attempt to take "two bites at a cherry," for if the restraining order were made permanent in this case the plaintiff must proceed in the original cause to have the assessment reallotted if there has been any action taken which makes it illegal or excessive. Such reassessment could not be made in this proceeding, and certainly the tract of land is not entitled in any event to be exempt from all assessments. The parties chiefly interested are the other members of the drainage district, who will have notice of any motion in that cause, and have opportunity to defend. Whatever reduction, if any, is made in that proceeding in the assessment on this tract will necessarily be made up by raising the assessment on the owners of the other lands in that district, and they should have opportunity to be heard.

This denies the plaintiff no right if she has been wronged, and will cause her no delay. We send her to the proper tribunal to move in the action in which the assessment has been made of which she has complained, and she can there be fully heard to vindicate her rights, if any, to a reduction in the assessment. Indeed, that proceeding was brought in Craven County, where the records therein are to be found, while this collateral proceeding to question the regularity of proceedings therein is brought in Lenoir.

The mere fact, so strongly insisted on by plaintiff's counsel, that while this assessment is only $445, all the assessments on this tract aggregate $2,200 on a tract of land which brought before it was drained $4,000 is a matter that was doubtless considered before the decree making the assessment and directing the issue of bonds was entered. The presumption is that the land was benefited far more than the amount of these assessments, or objection would have been made by Pate, the landowner, or by the plaintiff, as to whom notice by publication is, by the statute, presumed to have been given. But if there has been any wrong done, it is in that cause that the assessment should be reconsidered and upon proper proof reduced or reaffirmed.

Petition denied.

WALKER, J., concurring: The original proceedings are pending in Craven Superior Court, and this action to enjoin the execution issued upon the judgment rendered therein is brought in Lenoir. The judge merely finds as a fact that there was no service upon the plaintiff, but does not find that it appears affirmatively on the face of the Craven judgment there was no such service, and for all that does appear it may be and is very likely that the judge did not have the original record before him at the time he made his findings. If it appeared from the record that the plaintiff was served when in fact she was not, then by all our cases on the subject the *only* remedy is

by motion in the cause to correct the record. *Doyle v. Brown,* 72 N. C., 393; *Johnson v. Futrell,* 86 N. C., 122; *Sumner v. Sessoms,* 94 N. C., 371. The judgment is presumed to have been rendered on proper service appearing in the record, until the contrary is shown. We cannot assume that a court will give a judgment against a party in a case where it appears on the face of the proceedings that there had been no service upon him, either actual or constructive, because no court can be presumed to render a void judgment. All things, on the contrary, are supposed to have been done regularly and according to the course and practice of the court. This being so, and it being admitted that there is a judgment upon which process had issued to subject the plaintiffs' land to its satisfaction, we must act on the assumption that the record will show that the court proceeded regularly, and that it appears upon the record that process was duly served in one form or another, and we are not at liberty to presume otherwise. This being so, the only remedy, upon reason and ample authority, for correcting the record and making it speak the truth, if it states the fact falsely, is by a motion in the cause itself for proper relief, where the court that rendered the judgment can find the fact for itself and enter the proper order if a mistake was committed. If we should allow this to be done by an independent action in another county, it would produce confusion and unseemly conflict between the court rendering the judgment and some other court not having charge and control of the record, and it might also result in injustice, as even the most prudent person would search only the records of Craven County to find what judgments are docketed there, and would not consider it necessary that he should search the records of all the counties to ascertain if a judgment in Craven County had been impaired in an independent action or proceeding brought in some other county. This is no hardship on the defendant in the judgment, who alleges that he was not served with process, as when the motion is made in the proper court to correct the judgment or set it aside the court has the jurisdiction, upon application, to stay the execution which has been issued thereon, by a *supersedeas* or injunction, until the matter can be fully heard, the facts found in the orderly way, and the proper relief administered, if there has been irregular action by the court in the respect complained of by the petitioner. There is not the slightest danger of the plaintiff losing her land, or being prejudiced longer by the judgment condemning it to the payment of the assessment, if she will proceed with reasonable diligence in the manner indicated. Each court is the keeper of its own records, and can and will, on proper application, amend them so that they will actually speak the truth, and not merely import verity, which in law they do.

BANKS *v.* LANE.

BROWN, J., concurring: When this case was first before us, I, with the other members of the Court, was under the impression that service of the summons in the drainage proceedings was made on the mortgagor Pate, and that he owned the land subject to the mortgage to Mrs. Banks at the time the drainage proceeding was commenced. Upon further investigation, it appears that when that proceeding was commenced, Mrs. Banks had not sold the land, and that the relation of mortgagor and mortgagee did not then exist between her and Pate. It appears now by the judge's findings that no service of the summons was ever made on either Mrs. Banks or Pate. It sufficiently appears, however, that the lands then belonging to plaintiff, formerly Florence Spivy, were set out and embraced in said drainage proceedings and were duly assessed in her name as one of the landowners within said district.

The drainage proceeding is placed in the county of Craven and this action is pending in the county of Lenoir. I am of opinion that plaintiffs are entitled to relief, but that they should seek it by motion in the cause, to be made upon notice in the drainage proceeding pending in Craven County.

I admit that *Bowman v. Ward,* 152 N. C., 602, is an apparent authority for the position that plaintiffs can seek such relief in an independent action, but in that case it appeared affirmatively upon the face of the record that no service was made either personally or by publication. In this case it does not appear affirmatively upon the face of the drainage proceedings that plaintiff was not made a party by service of summons or by publication. Those proceedings are not before us. It only so appears by the findings of the judge. I think this case, therefore, comes within what is held in *Foard v. Alexander,* 64 N. C., 69.

This is especially true in a case like this, which is not an action *in personam,* but one *in rem.* The land is sued and not the owner. No personal judgment is rendered against the owner, but the judgment condemns the land to pay the assessment. In the drainage proceedings the land is described and identified doubtless by the name of the owner. All the other owners have a personal interest in maintaining the integrity of the assessment. If the plaintiff is required to make her motion in the drainage proceedings, she is put to no disadvantage, and all the other landowners will be represented.

As pointed out by the Court, she is entitled to an injunction to be issued by a Superior Court judge in that proceeding, as ancillary thereto, to stop the sale of her lands until the matter can be heard.

In this particular case I think this method of proceeding is more conducive to a proper administration of justice than an independent action.

BANKS v. LANE.

ALLEN, J., dissenting: I agreed to the former opinion because I understood from the oral argument it was conceded that process had been served in the drainage proceeding on Pate, the mortgagor in possession; but I find on the rehearing not only that it was not intended to make such an admission, but also that this is not the fact, and while disposed to sustain proceedings for the drainage of swamp lands, which tend to improve the public health and add to the wealth of the State, I cannot give my assent to the doctrine that a court of equity is without power to restrain the sale of land under a judicial proceeding when neither the owner of the land nor any one under whom she claims has had a day in court, or has been served with process personally or by publication.

I do not believe it has ever been so held before, and the citation of one authority in support of the position (*Parker v. Bledsoe,* 87 N. C., 221), in which the summons was served, an answer filed, and judgment rendered for the amount admitted to be due, leads to the conclusion that the ruling is without precedent.

What are the facts?

The land of the plaintiff, Mrs. Banks, was advertised for sale by the sheriff of Craven County on 1 February, 1915, to satisfy an assessment alleged to have been levied in a certain drainage proceeding, and this action was then commenced to restrain the sale upon the ground that no process was served on the plaintiff in the drainage proceeding, and that the assessment was therefore void.

A temporary restraining order was issued, and after several continuances it came on for hearing, the sheriff and the drainage district being parties and represented, and the plaintiff filed affidavits in support of their allegations; but his Honor, not content with this, required the original papers in the drainage proceeding to be brought before him "in order that the court may determine the question of service as bearing upon the validity of the assessment above mentioned, lack of service having been pleaded as a ground for injunctive relief against said sale." (See order, record, pp. 11 and 12.)

His Honor, then, having before him the affidavits and the original papers in the drainage proceeding, found the following facts: "And at this hearing, the plaintiffs having denied that any personal service has ever been made upon them or upon any of those under whom they claim, and having filed affidavits accordingly, and having denied that any proper and legal service of any kind has ever been made upon them or upon any of those under whom they claim, and the defendants having offered before the court nothing tending to prove that personal service has ever been made upon the plaintiffs or either of them, or any one under whom they claim, and having offered nothing to show

that service of any nature has ever been made upon the plaintiffs or either of them, or any of those under whom they claim, and the defendants claiming that the status of this cause and the drainage laws of the State of North Carolina pleaded eliminate the necessity of service in order that said land may be assessed; the court finds as a fact for the purpose of this hearing that no personal service has ever been made upon either of the plaintiffs or any of those under whom they claim, and finds that no service of publication has been properly made so as to authorize the said assessment against the said land, holding hereby that the assessment against the said land is invalid for the want of service upon the landowners and for lack of opportunity to be heard in court."

These findings have not been disturbed, nor was the exception filed that they were not supported by evidence, and *in them is the finding that neither the plaintiff nor any one under whom she claims was served with process, personally or by publication, in the drainage proceeding;* and as the mortgagee claims under the mortgagor, this is a finding of fact that neither the mortgagee nor the mortgagor was served.

This is the record, and, as it seems to me, we ought not to give a narrow construction to the findings and one different from their legal effect, when we know from the agreed return to the *certiorari,* which counsel on both sides assumed would issue as a matter of course, that if the term "nor any one under whom she claims" does not include the mortgagor it is because the final judgment in the drainage proceeding was entered in 1912 and the mortgage was not executed until 1913, so that it was impossible for the mortgagor to have been served, because the mortgage was not in existence until after the proceeding was concluded.

We should either refuse to consider this agreed statement of counsel and give to the language "nor any one under whom she claims" its legal effect, and say it includes the mortgagor, or we should consider it and say that Pate was not served because he executed the mortgage after the drainage proceeding was at an end.

If there was no service of process, personally or by publication, on the plaintiff or on any one under whom she claims, in the drainage proceeding, is the plaintiff entitled to restrain the sale of her land? I think so, and that the case of *Bowman v. Ward,* 152 N. C., 602, in which the opinion was written by *Associate Justice Brown* for a unanimous Court, is an authority directly in point.

In the *Bowman case* the land of the plaintiff was advertised for sale under execution, and an independent action was brought to restrain the sale upon the ground that there had been no service of process

on the plaintiff in the action in which the judgment was rendered, and it was held that the plaintiff was entitled to injunctive relief.

The Court said: "The plaintiff sues to restrain the selling of her land under execution upon a judgment rendered by a justice of the peace and docketed in the Superior Court of Henderson County. . . . No service of the summons or of the attachment has ever been made, either personally or by publication, and no publication made. . . . His Honor denied the injunction upon the ground that the proceeding was void on its face. We agree with him that the judgment is void, because it appears affirmatively upon the face of the record that no service, personally or by publication, has ever been made, either of the summons or attachment. . . . We think, however, his Honor should have restrained the sale, as the plaintiff is entitled to have the question finally determined as to the liability of her land for the judgment, and not be made to take the chance of losing it by forced sale under execution. If her land is liable for the judgment she should have the opportunity to pay it after a judicial determination."

There is no intimation in the opinion that the plaintiff ought to have proceeded by motion in the original action, as is now suggested in the opinion of the Court; and why should she do so? If she has not been made a party to that proceeding by the service of process, why should she be compelled to make herself a party by moving therein, instead of requiring those interested in the proceeding to issue process against her, if they wish to bind her land?

I have felt constrained to express my views because on this record the land of the plaintiff, which she has sold for $4,000 on a credit, since the assessment was made and without knowledge of it, has been assessed $2,293.60, when she has had no day in court and no opportunity to be heard; and this is not only a confiscation of her property, but it is subversive of the constitutional guarantee that no one shall be deprived of his property "but by the law of the land."