C. S. O'NEAL ET AL. v. T. J. MANN ET AL.

(Filed 26 January, 1927.)

1. **Government—Constitutional Law—Drainage Districts — Branches of Government.**

The creation of the Mattamuskeet Drainage District by the Legislature and providing for the assessments among the landowners therein according to benefits received under the proceedings in court provided by the statute, is not violative of our Constitution providing that the legislative and judicial, etc., departments of our government shall be separate and distinct from each other. Const. N. C., Art. I, sec. 8; C. S., 5312 et seq., ch. 94, Art. 5, subch. 3.

2. **Drainage Districts—Mattamuskeet Drainage District—Courts — Procedure—Statutes.**

Under the statutory proceedings for the formation of the Mattamuskeet Drainage District, only the lands therein are to be assessed according to benefits received, and no assessments are to be made against lands not benefited, and a party dissatisfied with the assessments against his lands may appeal, these matters to be determined by the court upon which jurisdiction is conferred by the statute. C. S., 5323, 5329, 5324.

3. **Same—Courts—Judgments—Motions in the Cause.**

The proceedings prescribed by statute for the formation of the Mattamuskeet Drainage District is judicial and not administrative, the remedy

O'NEAL v. MANN.

of such owners who claim their lands have been assessed without benefit being by motion in the cause after the judgment has been entered against them in the proceedings before the clerk.

**4. Drainage Districts — Mattamuskeet Drainage District — Quasi-Public Corporations—Government.**

The Mattamuskeet Drainage District is a statutory organization involving ultimately the public interest, but is primarily for the benefit of the private owners of land therein, and forms them into a *quasi*-public corporation conferring the power of eminent domain, and is not strictly speaking a subagency of the government in the administration of its local affairs.

**5. Drainage Districts—Mattamuskeet Drainage District—Courts—Judgment—Res Adjudicata—Estoppel—Assessments.**

While land under the provisions of the statute included in the Mattamuskeet Drainage District may be included against the consent of the owners, it may not be assessed unless in proportion to benefits conferred thereon, but when assessments have been made in the proceedings in the court designated by the statute, and have been finally adjudicated therein, the final judgment is *res adjudicata* as to such assessment, and will operate as an estoppel, unless changed or modified by a motion in the cause.

**6. Same—Assessments—Status of Incorporation—Members—Petitioners.**

Under the provisions of the statute creating the Mattamuskeet Drainage District, those who have their lands located within the district and who have not signed the petition, become members of the corporation so formed involuntarily by virtue of the judgment entered, which has assessed all the lands according to the benefits conferred, in which those who have signed the petition have an interest arising from the fact that to disturb or diminish the assessments of those who claim no benefit to their land, would either increase the assessments or render the assessments laid in the proceedings insufficient for the required purpose of the organization.

**7. Same—Vested Rights—Constitutional Law.**

The rights of landowners in the Mattamuskeet Drainage District having been determined in a court having jurisdiction as to assessments in proportion to the benefits conferred, cannot be affected by chapter 7, Public Laws of 1921, providing that "the districts heretofore or hereafter created under the law shall be and constitute political subdivisions of the State," later enacted, for such would be to impair the vested rights of those whose property had been assessed by the final judgment.

**8. Same—Statutes—Retroactive Laws.**

The Legislature has no power to impair vested rights acquired by landowners in the Mattamuskeet Drainage District under the final judgment of the court in proceedings in conformity with the statutes, by afterwards declaring that the district was a political subdivision of government upon the ground that over such agencies the Legislature has larger powers. Const. of N. C., Art. VII, sec. 12; Art. VIII, sec. 1.

APPEAL by plaintiffs from *Grady, J.*, at May Term, 1926, of HYDE. Reversed.

Controversy without action, involving the validity of chapter 611, Public-Local Laws 1925, entitled "An Act Excluding Certain Lands from Mattamuskeet Drainage District."

The court was of opinion, first, that the enactment of said act was a valid exercise by the General Assembly of its legislative power, and, second, that lands of defendants, therefore included within said district, having been excluded therefrom by said act, are not liable for assessments made by the board of drainage commissioners for the maintenance of said district.

Judgment was thereupon rendered, perpetually restraining and enjoining said board of drainage commissioners from collecting any assessments made upon said lands, since the ratification of said act, and also from levying any further assessments thereon.

From this judgment, plaintiffs appealed to the Supreme Court.

*W. L. Spencer for C. S. O'Neal et al.*
*C. B. Spencer for New Holland Corporation.*
*S. S. Mann for T. H. Jennette.*
*Small, MacLean & Rodman for Board of Drainage Commissioners.*
*Ward & Grimes for defendants.*
*Stephen C. Bragaw amicus curiæ.*

CONNOR, J. This appeal was docketed at the Spring Term, 1926, of this Court, after the call of appeals from the First District, and shortly before the expiration of said term. By consent of counsel, it was submitted without oral argument, upon printed briefs of both sides. Rule 10. A brief in support of the judgment of the Superior Court was filed by Hon. Stephen C. Bragaw, with the permission of the Court, as *amicus curiæ.*

An examination of the record disclosed that the question presented for decision was of grave importance not only to the parties to this controversy, but also to owners of lands included in other drainage districts, established under the laws of this State. The validity of an act of the General Assembly is involved by the contention of plaintiffs that said act is an exercise of judicial and not of legislative power, and is therefore in contravention of section 8 of Article I of the Constitution of North Carolina, in which it is declared that "the legislative, executive and supreme judicial powers of the government ought to be forever separate and distinct from each other." At the conclusion of the Spring Term, the appeal was continued, upon an adversari, to the Fall Term, 1926. It was ordered that the appeal should then be heard upon oral arguments.

These arguments have been heard; we have been greatly aided in the consideration of the appeal and in the decision of the question presented, not only by the well prepared and exhaustive briefs filed, but also by the oral arguments of the learned counsel who appeared in behalf of the respective parties to this controversy, in response to our request.

The question presented for our decision is this: Has the General Assembly of this State the power, by the enactment of a Public-Local statute, to exclude from a drainage district, established and organized under the laws of this State, certain lands described in the statute, and theretofore included within the district by the final order of the clerk of the Superior Court, made in the proceeding for the establishment of said district, upon the recital in the statute that said lands have not received the benefits contemplated at the time the district was established? Are lands so excluded relieved of liability for assessments thereafter made for the purpose of maintaining the district, with the result that assessments made upon the lands remaining therein for that purpose are necessarily increased?

If it shall be held that the General Assembly has such power, it is manifest that it will be invoked, as it has been in the instant case, by those whose lands have been included in a drainage district, established by law, upon a finding by the court that the same will be benefited by the establishment of the district, and who thereafter wish to have said lands relieved of assessments for the maintenance of the district, upon the contention, that the results from the establishment of the district were not as contemplated by the parties to the proceeding, and as the court, by whose order the district was established, found that they would be.

If chapter 611, Public-Local Laws 1925, was enacted by the General Assembly in the valid exercise of its legislative power, and the lands described therein are thereby excluded from said district for all purposes, except as provided therein, with respect to liability for bonds outstanding, it would seem to follow necessarily that they are relieved of all assessments thereafter made for the maintenance of said district, and that there was no error in the judgment restraining and enjoining the board of drainage commissioners from collecting assessments upon the lands of defendants which are embraced in the boundaries of the land excluded, levied since the ratification of said act, or from levying further assessments upon said lands. The only apparent purpose for the enactment of the statute was to relieve the lands described therein from liability for such assessments. If this purpose has been accomplished, it is agreed that it will result in an increase of the assessments upon the lands of plaintiffs, and upon the lands of others remaining in said district. Manifestly the rights of owners of lands remaining in the

district are affected by the statute excluding certain lands therefrom; in order to justify this result, it is recited in the statute that the lands excluded have not received the benefits contemplated at the time the district was established. No opportunity has been afforded to those whose assessments will be increased, for a hearing upon the contention that the excluded lands have not been benefited by the organization of the district and the improvements made therein; there has been no investigation to determine the truth of the recital, relied upon as a justification of the statute. The burdens upon the lands of plaintiffs, which it was required by statute should be assessed in proportion to the benefits received by said lands, and which it was contemplated would be shared by the lands excluded, in proportion to the benefits which said lands would also receive will necessarily be increased if chapter 611, Public-Local Laws 1925, shall be held valid. It is provided in the statute that the land excluded thereby "shall remain liable for its pro rata liability for said outstanding bonds of the district." It is agreed that there are now no bonds of the district outstanding, all the bonds theretofore issued having been paid; the proviso, however, is evidence of a recognition by the General Assembly that the statute would otherwise affect vested rights of bondholders. There is no provision in the statute relative to the liability of the land excluded thereby for assessments authorized to be made for the maintenance of the district. It is contended by plaintiffs that owners of lands remaining in the district have vested rights with respect to the liability of the lands excluded for assessments of which they cannot be deprived by an act of the General Assembly.

The Mattamuskeet Drainage District was established by a proceeding authorized by and conducted in full compliance with the provisions of chapter 442, Public Laws 1909, which as amended is now Article V, subchapter 111, of chapter 94 of the Consolidated Statutes, 1919. This Court has held that said act is constitutional, and that its enactment was a valid exercise of legislative power. *Lumber Co. v. Drainage Comrs.,* 174 N. C., 647; *Drainage Comrs. v. Mitchell,* 170 N. C., 324; *Griffin v. Drainage Comrs.,* 169 N. C., 642; *Shelton v. White,* 163 N. C., 90; *Newby v. Drainage District,* 163 N. C., 24; *Sanderlin v. Luken,* 152 N. C., 738; *Kinston v. Loftin,* 149 N. C., 255. The State Board of Education, at that time the owner of the land known as "The Lake Bottom," was a party to the proceeding for the establishment of the district, as authorized by chapter 509, Public Laws 1909. The plaintiff, New Holland Corporation, is now the owner of said Lake Bottom, claiming under the State Board of Education; the other individual plaintiffs are owners of lands which are not embraced in the boundaries of the land excluded by the statute, but which were included in the district when established by the final order of the clerk of the Superior Court of

Hyde County. Defendants are owners of lands included in the district when it was established; these lands are embraced within the land excluded by the statute.

If the proceeding under which Mattamuskeet Drainage District was established was a judicial proceeding, in which the rights of all the parties were finally adjudicated, then each of said parties is bound by the orders and judgments made therein; all matters which were required by statute to be finally determined before the district was established, are as to said parties, and as to those claiming under them, *res adjudicata.* They are estopped from thereafter questioning by independent suit, or otherwise, except by motion in the cause, made upon well recognized grounds for such motions, the judgment establishing the district, or the validity or amount of assessments made in the cause, or the matter of burdens and benefits affecting the lands included in the district at the time of its organization. It has been held by this Court that such orders and judgments are estoppels of record upon the parties to the proceeding, and that matters determined thereby are *res adjudicata;* this conclusion was reached, because the proceeding for the establishment of a drainage district, authorized by the statute, was held to be a judicial proceeding. *Spencer v. Wills,* 179 N. C., 175; *Craven v. Drainage Comrs.,* 176 N. C., 531; *Lumber Co. v. Drainage Comrs.,* 174 N. C., 647; *Banks v. Lane,* 170 N. C., 41, and on rehearing, 171 N. C., 505; *Griffin v. Comrs.,* 169 N. C., 642; *Newby v. Drainage District,* 163 N. C., 24; *Shelton v. White,* 163 N. C., 90. In *Spencer v. Wills, supra, Hoke, J.,* says: "These and other like rulings must be challenged at the proper time, and in the course of the proceedings, and unless objection is successfully maintained, the parties are concluded."

It is expressly provided by statute that no lands included in a drainage district, established thereunder, shall be assessed for drainage tax, unless the court shall find that such lands will be benefited by the establishment of the district, C. S., 5323, and that all lands so included, which the court shall find will be benefited, shall be assessed in proportion to the benefits received. C. S., 5329. The right of appeal from an order including lands in the district to the Superior Court of the county, in term time, is secured to any party who thinks that his land, included in the district, will not be benefited by its establishment and organization. C. S., 5324. The statute under which the Mattamuskeet Drainage District was established clearly provides that the question as to whether or not lands included therein will be benefited by the district, and therefore liable for assessments for its maintenance, shall be determined by the court upon which jurisdiction is conferred for that purpose. In recognition of this principle, and also to provide for the relief of a landowner, with respect to whose land experience had shown that the results

contemplated had not been realized, the General Assembly enacted chapter 439, Public-Local Laws 1923. It is therein provided that where it has been found from experience, that one or more tracts of land included in any drainage district established in Hyde County, cannot be successfully drained for agricultural purposes, such lands may be excluded from the district, upon petition to the board of drainage commissioners, and thereafter relieved of assessments for the maintenance of the district. If upon application to the board of drainage commissioners, relief is denied, an appeal may be taken by the petitioner to the Superior Court of Hyde County, "which shall have full power and authority to find the facts and grant relief as in other suits in equity." This statute is a clear indication that the General Assembly recognized that the proceeding under which Mattamuskeet Drainage District was established was a judicial proceeding, and that relief, such as defendants now seek, was properly to be had by petition filed in said proceeding.

It is contended, however, on behalf of defendants, and in support of the judgment of the Superior Court, that a proceeding for the establishment of a drainage district, under the statute applicable to this controversy, is not a judicial proceeding in which the rights of the parties with respect to the matters involved therein are finally adjudicated, but is merely an administrative proceeding, authorized by the General Assembly, and resulting in the organization of a governmental agency, within a political subdivision of the State, whose boundaries are determined in such proceeding, as in the case of a county, city or town, or a school district or road district; that a drainage district, established under statutory authority, is merely an instrument for the accomplishment of a governmental purpose; that conceding that there are decisions of this Court to the contrary, holding that drainage districts, organized under an act of 1909, as amended, are not mere governmental agencies, but are *quasi*-public corporations, created for private benefit, and endowed with the power of eminent domain and other governmental functions for the public benefit (*Canal Co. v. Whitley,* 172 N. C., 100 and *Pate v. Banks,* 178 N. C., 139), the purpose and effect of chapter 7, Public Laws 1921, is to constitute such districts, both those established since and those established prior to the enactment of said statute, political subdivisions of the State, and therefore subject to the exercise of legislative power with respect to their boundaries as well as with respect to other matters affecting said districts. If these drainage districts are mere political subdivisions of the State, organized as governmental agencies, for the accomplishment, chiefly of governmental purposes, and only incidentally for private benefit, these contentions seem to be well founded. There are authoritative decisions of this Court which sustain the contentions of defendants that drainage districts, if they are governmental

agencies, established for governmental purposes, are subject to the legislative power of the General Assembly, with respect to their boundaries.

The General Assembly has the power, by statute, to create or to provide for the creation of a political subdivision of the State, and for the government thereof, to the end that same may function as an agency of the State, for the accomplishment of some well recognized governmental purpose. The State may thus provide in the exercise of its police power for the protection of the public health. *Reed v. Engineering Co.*, 188 N. C., 39. A statute enacted for the accomplishment of a governmental purpose by the creation of a governmental agency, within a political subdivision of the State, even if such agency is constituted a corporation, involves no sort of contract between the General Assembly, on the one part, and citizens of the locality affected, on the other part. Such governmental agency, even if a municipal corporation, is under the control, in all respects, of the General Assembly and is subject as to all matters which affect such agency or such corporation to its legislative will, restricted only by pertinent constitutional provisions. The General Assembly may by statute alter, amend or repeal, without the approval and contrary to the wishes of persons affected thereby, any statute under which a public corporation, created as a governmental agency for a public purpose, was organized. This power arises from a different principle from that by which the General Assembly is authorized to alter, amend or repeal a statute under which a private corporation may have been organized. The power in the latter instance is expressly reserved in the Constitution of this State. Art. VIII, sec. 1.

The distinction between a public and a private corporation in this respect is clearly drawn by *Pearson, J.,* in *Mills v. Williams*, 33 N. C., 558. He says, "The substantial distinction is this: Some corporations are created by the mere will of the Legislature, there being no other party interested or concerned. To this body a portion of the power of the Legislature is delegated to be exercised for the public good, and subject at all times to be modified, changed or annulled. Other corporations are the result of contract. The Legislature is not the only party interested, for, although it has a public purpose to be accomplished, it chooses to do it by the instrumentality of a second party. These two parties make a contract. The Legislature, for and in consideration of certain labor, and outlay of money, confers upon the party of the second part the privilege of being a corporation, with certain powers and capacities. The expectation of benefit to the public is the moving consideration on one side; that of expected remuneration for the outlay is the consideration on the other. It is a contract and therefore cannot be modified, changed or annulled without the consent of both parties." Since the Constitution of 1868, the last statement must be modified, for while

O'NEAL v. MANN.

it is therein provided that corporations may be formed under general laws, or, in certain instances, under special acts, power to alter, from time to time, or to repeal such general laws or special acts is expressly reserved. The distinction, however, as drawn so clearly by *Pearson, J.,* has been uniformly recognized and the principle underlying it has been consistently applied in decisions of this Court.

In *Manly v. Raleigh,* 57 N. C., 370, it was held that the General Assembly has power to incorporate a town or to extend or contract the limits of one already incorporated, whenever, in its opinion public policy requires it to be done. In *Ward v. Elizabeth City,* 121 N. C., 3, *Clark, J.,* says: "The Legislature, at its discretion can abolish counties *(Mills v. Williams,* 33 N. C., 558) and, of course, cities and towns *(Lilly v. Taylor,* 88 N. C., 489) and also all other corporations (Const., Art. VII, sec. 12 and Art. VIII, sec. 1) since they are all alike creatures of its will, and exist only at its pleasure." In *Lutterloh v. Fayetteville,* 149 N. C., 65, *Brown, J.,* says: "We have held in common with all the courts of this country that municipal corporations, in the absence of constitutional restrictions, are the creatures of the legislative will and are subject to its control; the sole object being the public good, and that rests in legislative discretion."

This Court has uniformly held in decisions sustaining the constitutionality of chapter 442, Public Laws 1909, as amended by subsequent statutes, that a drainage district, established by a proceeding in accordance with the provisions of said statute is not a municipal corporation falling under the classification which includes counties, cities or towns, school districts or road districts; but that such district is a *quasi*-public corporation, created for private benefit. The primary purpose of such districts is the drainage of lands included therein for agricultural purposes; this is not a public purpose, to be accomplished by a governmental agency. The benefits chiefly contemplated accrue to the owner of the land from its increased productivity, resulting from drainage. Only lands which are benefited are subject to assessments; but all lands included in the district, which are benefited, are subject to assessments, the amount of the assessment upon the land of each owner being determined by the benefit which the said land receives. A drainage district may be established under the statute only upon a petition signed by a majority of the resident landowners in the proposed district, or by the owners of three-fifths of all the lands which will be affected or assessed for the expense of the proposed improvements. C. S., 5314. Landowners who sign the petition become voluntarily members of the corporation upon its organization pursuant to the final order in the proceeding in which the petition is filed.

11—193

Lands embraced in the boundaries of a proposed district whose owners are unwilling to join in the petition or who oppose the establishment of the district, may be included therein only upon a finding by the court that such lands will be benefited by the drainage resulting from the establishment and organization of the district; the court has the power to include such lands in the district, and to assess them for their proportionate share of the expense, only because of the benefits which they will receive. Power is conferred upon courts to include lands whose owners are unwilling to join in the petition, or who are opposed to the establishment of the district, because in addition to the private benefit, there is also a public benefit contemplated from the establishment of a drainage district. It is declared by statute "that the drainage of swamp lands and the drainage of surface water from agricultural lands and the reclamation of tidal marshes shall be considered a public use and benefit and conducive to the public health, convenience and welfare." It is because of the benefits which accrue to the public from the establishment of a drainage district under the statute, that power conferred thereby upon the court to include lands of owners who are unwilling to sign the petition, or who oppose the establishment of the district is sustained.

With respect to landowners who sign the petition, and thereby voluntarily become members of the corporation organized within the district, the corporation is for a private purpose and is therefore a private corporation; but with respect to landowners, who do not sign the petition, and who become members by virtue of the order or judgment of the court, the corporation partakes of the nature of a public corporation. These latter become members not voluntarily, but by virtue of a judgment of a court, which hears before it adjudges. The right to condemn lands for purposes of right of ways and other purposes is conferred upon the corporation, because it serves the public interest. Adequate compensation must be made for private property taken by the corporation, under the power of eminent domain.

This Court has found it necessary in the consideration of questions presented for decision, in which these drainage districts were involved, to determine their nature. In *Canal Co. v. Whitley,* 172 N. C., 100, it is said by *Brown, J.,* writing for the Court: "Drainage districts are regarded as *quasi*-public corporations created for private benefit but endowed with the power of eminent domain and other governmental functions for the public benefit, *Sanderlin v. Luken,* 152 N. C., 738; *Drainage Comrs. v. Farm Assn.,* 165 N. C., 697." In *Pate v. Banks,* 178 N. C., 139, *Clark, C. J.,* says: "The drainage system was deemed by the Legislature a measure required for the public benefit. While a drainage district is not a governmental agency like a township, or county

O'NEAL v. MANN.

(Sanderlin v. Luken, 152 N. C., 741; Drainage Comrs. v. Webb, 160 N. C., 594; Leary v. Drainage Comrs., 172 N. C., 26), it is a geographical quasi-public corporation, and the bonds issued by it for the improvements of the district, like bonds issued for public roads or other purposes, become an indebtedness of the district and not of any landowner therein." In Lang v. Development Co., 169 N. C., 662, Hoke, J., says: "It has long been recognized that our lowlands, particularly in the eastern part of the State, are of such extended area and give such promise of productive fertility and their proper drainage affects the public weal to such a degree that the power of eminent domain, when properly safeguarded, may well be conferred upon corporations or companies engaged in this work when in a given case, it is of such extent that the exercise of the power is required for the efficient carrying out of the enterprise." In Leary v. Comrs., 172 N. C., 25, it is held that a drainage district created under the drainage statute is not a political agency of the State, and is liable for the wrongful diversion of water to the damage of a lower proprietor of lands lying beyond the boundaries of the district, when those claiming such damages are in no wise claiming under such proceedings or under any party thereto. Clark, C. J., says: "Drainage districts are favored because of the public benefit, but none the less the prime motive in organizing them is the pecuniary benefit to the corporations. The State confers on them the right of eminent domain, but cannot exempt them from taxation, or exempt them from liability. They are on the same footing in these respects with other quasi-public corporations." Again, "These drainage districts are created for the benefit of the people of the locality and are favored with certain privileges of eminent domain and otherwise because of the general benefit to the public. But they are not exempt from liability for their torts or contracts." In Sawyer v. Drainage District, 179 N. C., 182, Hoke, J., says: "It is held in this jurisdiction that these drainage districts, established under the provisions of our present statutes, are liable for wrongs and torts committed on the property of adjoining proprietors whose lands are not embraced in the district. While they may have certain municipal powers bestowed upon them, the better to carry out their purpose, being organized primarily for the benefit of individual owners, they are not regarded as municipal corporations in the constitutional sense of the term, nor protected as governmental agencies from suits by individuals except when the same may be authorized by law. They are classed rather with railroads and other quasi-public corporations, and may be held liable, as stated, for wrongful invasion of the proprietary rights of third persons." Leary v. Comrs., 172 N. C., 25; Sou. Assembly v. Palmer, 166 N. C., 75, and other cases cited.

Upon authoritative decisions of this Court, and after full consideration of the principles upon which those decisions were made, we are of the opinion that Mattamuskeet Drainage District was not, upon its organization under chapter 442, Public Laws 1909, a public or municipal corporation, functioning as a governmental agency, within a political subdivision of the State.

Defendants contend, however, that the General Assembly by chapter 7, Public Laws 1921, has declared that said district, is a political subdivision of the State and that, therefore, it should now be held that said district is a governmental agency for a public purpose, that the corporation is a public or municipal corporation, and is subject in all respects to the legislative will. Whatever may have been the purpose of the General Assembly in enacting this statute, and thereby amending chapter 442, Public Laws 1909, it cannot be held to have affected the nature or character of a district established prior to its enactment. It is provided in the statute that "the districts heretofore and hereafter created under the law shall be and constitute political subdivisions of the State." Parties to a proceeding instituted prior to the enactment of the act of 1921, whose rights under the statute then in force have been adjudicated and finally determined by orders and judgments therein, cannot be deprived of such rights by a legislative declaration as to the nature of the district established by the proceeding. That such was not the purpose of the General Assembly we think is manifest, for at its next session it enacted chapter 439, Public-Local Laws 1923, which is a recognition by the General Assembly that the proceeding under which this district was established was a judicial proceeding, and that parties thereto who had acquired rights under orders and judgments therein could not be deprived of such rights without an opportunity to be heard in said proceeding. See *Cole v. Norborne Land Drainage District,* 46 Sup. Ct. Reporter, 196, opinion of *Mr. Justice Holmes,* filed 1 Februray, 1926.

The Mattamuskeet Drainage District is now, as it has been since its organization, a *quasi*-public corporation, organized primarily for the benefit of owners of lands included therein, serving, however, to promote the public welfare, and therefore organized without regard to whether all the landowners consented to its organization. It is not, therefore, subject to the legislative will of the General Assembly with regard to its boundaries; such boundaries can be neither extended nor contracted by statute. Whether or not lands included in the district have received benefits from the establishment and maintenance thereof, and shall therefore be assessed in proportion to said benefits, or be relieved of further assessments, because of a failure to receive benefits, may be determined upon petition filed in the proceeding as provided in chapter 439, Public-Local Laws 1923. The court has ample power to determine

what the facts are upon a contention that lands in the district have not been benefited, and to afford adequate relief if the contention is sustained. The recital in chapter 611, Public-Local Laws 1925, that the lands described therein have received no benefits is not conclusive upon parties to the proceeding, or upon those who claim under such parties; a finding by the court, however, after a hearing upon notice, will be conclusive and binding upon all parties.

We are further of the opinion that chapter 611, Public-Local Laws 1925, cannot be held valid as an exercise of power reserved by section 1, Art. VIII of the Constitution to alter, amend, or repeal any general law or special act, providing for the formation of a corporation, other than municipal. This statute does not purport to alter or amend the general law under which Mattamuskeet Drainage District was formed, as affecting the corporation; its effect, if valid, is to discriminate between owners of lands thereby excluded, and owners of lands remaining in the district, relieving the former of burdens imposed by law, upon a judicial finding of fact, and increasing the burdens imposed thereby upon the latter. It deprives each of the landowners, whose lands remain in the district of the right to have all the lands included in the district, at the time same was established to share in the burden of maintaining the district, in proportion to benefits received. The power of the General Assembly, under section 1, Art. VIII of the Constitution, with respect to amendments of general laws or special acts, providing for the formation of corporations other than municipal, is subject to limitation. Such power cannot be exercised for the purpose, or with the effect of depriving individuals of rights acquired under the law. *S. v. Morris,* 77 N. C., 512; *Power Co. v. Elizabeth City,* 188 N. C., 278. See *Garey v. St. Joe Mining Co.* (Utah), 12 L. R. A., N. S., 554.

We do not concur in the opinion of the Superior Court that the enactment of chapter 611, Public-Local Laws 1925, was a valid exercise of legislative power. There are decisions in other jurisdictions which sustain this opinion, based upon the holdings of the courts of these jurisdictions as to the nature of drainage districts organized under statutes in force therein. Our decision is in accord with the holdings of this Court with respect to the nature of a drainage district organized under chapter 442, Public Laws 1909, as amended, and is, we think, supported not only by these decisions, but also by principles which are fundamental and applicable to the question presented by this appeal. In accordance with this opinion, the judgment must be

Reversed.