## IN RE BIG COLD WATER DRAINAGE DISTRICT.

(Filed 30 April, 1913.)

**1. Drainage Districts—Constitutional Law.**

Chapter 442, Laws 1909, providing for the laying off of drainage districts, is constitutional and valid.

**2. Drainage Districts—Instructions, How Construed—Benefits to the Proposed District—Health—Interpretation of Statutes.**

Where detached portions of a charge are erroneous, when considered alone, but correct when considered with the other parts, as a whole, the charge will not be held for error; and when it appears, in proceedings to lay off a drainage district under chapter 442, Laws 1909, that the jury were instructed to consider "not only the increased facilities of the land for producing crops, but the benefit to the health of the people who live in the district," it will not be construed as erroneous because other parts of the charge, taken singly, did not appear to confine the question of health to those living in the proposed district.

**3. Drainage Districts—Findings of Fact by Clerk—Sufficiency—Exceptions—Trial de Novo.**

On appeal from the clerk, proceedings to lay off a drainage district are heard *de novo* in the Superior Court, upon exceptions taken before the clerk, and only these exceptions may

be considered (amendments to Drainage Act, sec. 3, ch. 67, Laws 1911), and it is sufficient that the clerk has found as a fact that the allegations set out in the petition are true, if these allegations are sufficient, and distinctly and clearly made.

**4. Drainage Districts—Interpretation of Statutes—Repealing Clauses —Purview of Act.**

Chapter 20, Laws 1895, authorizing adjacent owners on Cold Water Creek to clean out and straighten the channel thereof, under a certain method, does not come within the purview of the Drainage District Act, ch. 442, Laws 1909, and hence the exception in the latter act as to "any local drainage law already enacted," etc., does not apply.

APPEAL by defendant from *Daniels, J.,* at August Term, 1912, of CABARRÜS.

*Heriot Clarkson, L. T. Hartsell, and J. Lee Crowell for petitioners.* ·

*Morrison, Caldwell, and H. S. Williams for defendants.*

CLARK, C. J. This is a proceeding under the General Drainage Act, ch. 442, Laws 1909. The petitioners, fifty-eight in number, filed their petition, duly signed, and setting out the necessary allegations. The summons was served upon nine others in the district who did not join in the petition. Under section 3 of the act, and after hearing objections, the order was made establishing the drainage district and appointing the board of viewers. Upon objections filed, the clerk confirmed the report of the viewers, and an appeal was taken to the judge. At term an issue was submitted to the jury, upon the only objection filed by the objectors, *i. e.,* "Is the cost of construction greater than the benefits that will accrue to the land?" to which the jury responded "No," and thereupon judgment was rendered confirming the action of the clerk.

The proceedings were regular in all respects under chapter 442, Laws 1909, whose constitutionality was thoroughly discussed and upheld by *Mr. Justice Hoke* in *Sanderlin v. Luken,* 152 N. C., 739, which has been reaffirmed, *White v. Lane,* 153 N. C., 17; *Trustees v. Webb,* 155 N. C., 386; *Carter v. Commissioners* (*in re* Drainage of Mattamuskeet Lake), 156 N. C., 187.

The objectors filed two assignments of error to the charge. The first of these is abandoned here. The other, that the court instructed the jury to take into consideration the health of the community instead of confining them to the question of health in so far as it affected the lands within the drainage district, cannot be sustained, for the court charged that the jury should consider "not only the increased facilities of the land for producing crops, but the benefit to the health of the people who live in the district." Taking a detached portion of the charge, there might be some ground for the exception, but as *Walker*, *J.,* said in *Kornegay v. R. R.,* 154 N. C., 392, "We are not permitted to select detached portions of the charge, even if in themselves subject to criticism, and assign error to them, when, if considered with the other parts of the charge, they are readily explained and the charge in its entirety appears to be correct. Each portion of the charge must be construed with reference to what precedes and follows it, and this is the only reasonable rule to adopt." Reading the entire charge, we do not think the jury was misled.

The third exception is that in the judgment the clerk failed to find as a fact that the lands described were "wet, swamp, or overflowed lands, or lands covered by water, or that the drainage of the lands described would benefit the public health or be conducive to the general welfare." The court found as a fact that the allegations set out in the petition were true, and those allegations are distinctly and clearly made in the petition. Besides, on appeal the cause was tried *de novo,* and the only issue raised by the objectors was as to the cost of construction, and whether it would exceed the benefits. The amendment to the drainage act, sec. 3, ch. 67, Laws 1911, provides that appeals in these cases "shall be based and heard only upon the exceptions theretofore filed by the complaining parties, either as to the issues of law or fact, and no additional exceptions shall be considered by the court upon the hearing of the appeal." In fact, none other was raised.

The objectors' last exception is that chapter 442, Laws 1909, provided that it should not repeal or change "any local drain-

162—9

age law already enacted or to be enacted by the General Assembly of 1909." It was earnestly debated before us whether that restriction applied to local drainage acts already enacted by the General Assembly of 1909 or to those enacted prior thereto. But we need not pass upon the point. Aside from the fact that this exception was not made before the clerk, and, therefore, under section 3, chapter 67, Laws 1911, was not a matter for consideration on appeal, we are of opinion that chapter 206, Laws 1895, which defendants claim is a bar to this proceeding, in no wise covers the ground of the statute under which this proceeding is taken out.

Chapter 20, Laws 1895, simply authorized the adjacent owners on Cold Water Creek to clean out and straighten the channel thereof, somewhat upon the system under which our roads have been worked by conscription of labor. The hands to be furnished were to be worked not less than four nor more than twenty days in each year. Chapter 442, Laws 1909, was a new departure in North Carolina. It is the adoption of a system, heretofore successfully operated in many other States, for the coöperation of landowners in the drainage of lands by forming drainage districts, which were to become *quasi*-public corporations, for the purpose of improving the health of the district and the fertility of the lands. Under this drainage district system the lands are assessed in proportion to the benefits derived. An organization is effected in each district, to execute and maintain a system of drainage. As in every community there are some who oppose any proposition looking to coöperation for the public health, or any other purpose, this act provides that when three-fifths of the landowners in any proposed district shall sign a petition, notice shall be issued to the others, and if upon examination of the petition, and the evidence, the clerk of the court shall find that the law has been complied with, a board of viewers shall be appointed, who shall make investigation and report, with the aid of a competent civil engineer, and upon coming in of the report of the viewers the clerk will hear the objections raised and render a judgment, from which an appeal lies to the Superior Court.

This act is well drawn, and is based upon the experience and the statutes of other States, and up to date more than 100 of these drainage districts have been organized in North Carolina with great benefit to the health, and in the increased productiveness of the lands, in these districts. Together with the increased school facilities and better roads, this new drainage system is aiding vastly in promoting the development of this State. In Florida, the State itself has created a drainage district of 4½ million acres. This system operating in many States has by the coöperation of landowners redeemed a vast acreage.

The proceedings herein have been regular, and we find therein

No error.