The following is the case agreed:
1. The plaintiff, Virginia-Carolina Farms Company, Inc., is a corporation duly created and organized under the laws of the State of Virginia; that the board of drainage commissioners of Carteret County Drainage District No. 1 is a corporation duly created and organized under the drainage proceedings hereinafter referred to, and by virtue of chapter 442, Acts of 1909, as amended; that Core Sound Farms, Inc., is a corporation, duly created and organized under the laws of the State of North Carolina.
2. That the plaintiff and said Core Sound Farms, Inc., filed their petition before the clerk of the Superior Court of Carteret County to establish a drainage district under the general drainage law of North Carolina, being chapter 442, Public Laws of 1909, as amended, following which, and in due course, a board of drainage commissioners of Carteret County Drainage District No. 1 were duly elected and organized, and now constitute the corporation defendant of that name; that the members of said board are G.S. Spear, chairman, who is also president of the plaintiff company, and Charles M. Talmadge, and William Gale, the said William Gale being vice-chairman, and said Charles M. Talmadge, secretary of said board; that a transcript of the entire record in the proceeding for the establishment of said drainage district is attached hereto and made part hereof, including the minutes of said board.
3. That said drainage district comprises an area or body of land containing about 32,867 acres, of which about 29,700 acres are owned by the plaintiff, and the balance by Core Sound Farms, Inc., said lands also constituting Carteret Township in Carteret County. That said lands are also included and described in two mortgages or deeds of trust, duly executed and recorded in Carteret County prior to the institution of said drainage proceeding, securing (663) bonds in the principal amount of about $281,000, which bonds are now held by various persons or corporations; that neither the mortgagees nor trustees under said mortgages or deeds of trust, nor the bondholders secured thereby, have ever been made parties to said drainage proceeding; that the facts stated in the petition in said drainage proceeding, in respect of the character and condition of the lands therein described, and the necessity for drainage thereof, are true, and the work already done demonstrates that said lands can be drained and will be materially enhanced in value thereby.
4. That preliminary to the institution of said drainage proceeding, plaintiff caused investigation, surveys, and plans to be made *Page 712 
looking to the development of said lands, and to the establishment of a drainage district to drain the same at a cost of $17,531, as set out in the final report of the engineer and viewers who made use of or adopted the investigations, surveys, and plans which plaintiff had so caused to be undertaken, and said amount of $17,531 is not in excess of the reasonable value thereof, and, in fact, it is less than would be the actual cost of doing the same work or same character of work over again.
5. That in contemplation of the establishment of said district, the plaintiff also caused construction work to be undertaken on several of the canals of the proposed drainage system or district and yardage to the amount of 391,233 1/2 cubic yards were excavated, it being the same work referred to in section 4 of the original petition; that a copy of the map accompanying the final report of the engineer and viewers is also filed herewith and made part hereof, showing the entire drainage plan or system, and the work heretofore done by plaintiff is in accordance therewith, and would now have to be done as part of the drainage plan or system at increased cost and involving further delay; and same was taken over and made part of the proposed plan and improvement.
6. A contract has been let by said board of drainage commissioners for the construction and completion of the canals of the district to Northwestern Drainage Company at the price or rate of 16 cents per cubic yard, which is now a fair price for work of that kind, but performance of this contract has not begun, and, in fact, is being held up by the conditions hereinafter recited; that in order to pay for the work to be done, the said board proposed to issue bonds in the principal amount of $330,000, which included a sum sufficient to reimburse the plaintiff for the excavations heretofore done by it at the contract price of 16 cents per yard, together with an estimated amount for interest, maintenance, and incidental expenses, which bonds will bear interest at the rate of 6 per cent per annum, and will be payable in ten annual equal installments, as to the principal thereof, the interest being payable semiannually, the first (664) installment of principal being payable three years after date of issue, in accordance with the drainage law; that of this total issue of $330,000, said board of drainage commissioners proposed to execute and deliver bonds to plaintiff in payment for the construction theretofore done by it, as aforesaid, which plaintiff agreed to accept at the contract price, and to include therein the engineering and other preliminary costs advanced by it, amounting to $17,350, the result of this arrangement being that the actual cost of the district will be less than if it were now to make the expenditures *Page 713 
for this purpose, and resolutions were adopted by the board pursuant to this arrangement, which resolutions are set out in the attached transcript.
7. All the lands within the district owned by the plaintiff, and by Core Sound Farms, Inc., have been classified, and will be assessed for such amounts as are necessary to pay and discharge the said bonds and interest as and when due, and no objection or exception has been made or taken by any party to the drainage proceeding to any order therein or report therein, or to any resolution of the board, but the board is now advised and believes that it is, or may be, without authority to issue and deliver bonds to plaintiff for the amount heretofore advanced, or for work heretofore done by it, and prospective purchasers of or bidders on the total bond issue have refused to accept or to comply with their bids on the ground that the total issue would be invalid or illegal, and the assessments made unauthorized as to the total issue, and assessments therefor included an amount sufficient to reimburse the plaintiff, as aforesaid, and that the Northwestern Drainage Company has also refused to take bonds in payment for the work to be done by it for the same reason.
8. The board took the action and adopted the resolutions set out in the transcript filed herewith in the belief that it had the right, and that it was its duty, to reimburse plaintiff, and to issue and deliver bonds for that purpose, as aforesaid, and was about to proceed in accordance therewith, but was confronted with inability to sell the total bond issue, in consequence of which the prosecution of the work has been held up; that the plaintiff insists that the action of the board is lawful and demands that the bonds be issued and delivered to it in the sum of $62,645.37 for money advanced on work done, as aforemaid, and assessments made to pay the same as part of the total bond issue of $330,000, and that the bonds so issued and delivered to it should be neither the first nor last in time of payment, but should be a proportionate part of the entire issue, without distinction as to priority, or otherwise; that the board, being a quasi-
public corporation, is advised and believes that it is not bound to issue and deliver bonds to plaintiff, notwithstanding its resolution in that regard, and is further advised and believes that if it does so it will not only jeopardize the entire issue, but make it impossible to sell the same, although admitting that the (665) district has received benefits for the money advanced and work done by plaintiff at least equal to the amount claimed by the plaintiff.
Wherefore, having agreed upon the foregoing statement of the facts, the parties to this controversy now submit to the court the following questions: *Page 714 
(1) Whether the board of drainage commissioners of Carteret County Drainage District No. 1 is required or authorized to reimburse plaintiff for the amount advanced and work done by it to the amount of $62,645.37, and to levy and collect taxes therefor.
(2) Whether the validity of the total issue of $330,000 will be affected or prejudiced by the execution and delivery to plaintiff of bonds for the amount due it out of the total issue.
(3) Whether the bonds so issued will constitute a first and paramount lien on all the lands within the district, subject only to State and county taxes, as provided in the drainage law.
It is agreed that if the court shall be of opinion with plaintiff, it shall enter such judgment or decree as ought to be entered upon the facts to compel and validate the total bond issue of $330,000, and the delivery to plaintiff of bonds for the amount due it, but if the court should be of opinion with defendants, it shall enter such judgment or decree as ought to be entered in the premises.
 SMALL, MacLEAN, BRAGAW RODMAN, Attorneys for Plaintiff.
 J. F. DUNCAN, Attorney for Defendant.
His Honor rendered the following judgment:
"This cause coming on to be heard before his Honor, John H. Kerr, judge presiding in the courts of the Fifth Judicial District, Fall Term, 1919, upon the facts agreed in the above entitled controversy submitted without action, and the court being of opinion that the plaintiff, Virginia-Carolina Farms, Inc., is entitled to be reimbursed for the amount advanced and work done by it in the construction of ditches, drains, and watercourses now embraced within the Carteret County Drainage District No. 1, which system of ditches, drains, and watercourses has been taken over and become a part of the said drainage district, and landowners therein are now the beneficiaries, the court finding as a fact that the amount sought to be recovered by the plaintiff for said construction work is less than the said drainage district, after its establishment could have procured the said work to be done, and further, that the said board of drainage commissioners of said Carteret County Drainage District No. 1, in good faith, undertook and agreed to reimburse plaintiff (666) for the amount expended in said construction work, and to issue and deliver its bonds for that purpose.
"And the court being further of the opinion that the validity of the total bond issue contemplated by the said board of drainage commissioners of said district will not be affected in any respect by *Page 715 
the execution and delivery to plaintiff of bonds at par, for the amount due to plaintiff for construction work, and that such bonds, when so issued, will constitute a first and paramount lien on all the lands within the said district, subject only to State and county taxes, as now provided by law:
"It is now, therefore, adjudged and decreed that the plaintiff, Virginia-Carolina Farms Co., Inc., is entitled to recover of the defendant board of drainage commissioners of Carteret County Drainage District No. 1 the sum of sixty-two thousand six hundred forty-five and 37-100 dollars ($62,645.37) by way of reimbursement or payment for money advanced or work done in the construction of drains, ditches, and waterways, now constituting a part of the drainage system of said district, and that the said defendant, the board of drainage commissioners of Carteret County Drainage District No. 1, be, and the same is hereby, authorized and empowered to issue its bonds for construction work, as provided by law in such cases, and out of the proceeds of sale thereof to pay to the plaintiff the aforesaid sum of $62,645.37, and to make such assessments upon the lands within the said district as will be sufficient to provide for the payment of interest on such bonds and to retire the same at maturity, as now provided by law applicable to drainage bonds and assessments for drainage purposes.
"It is further adjudged and decreed that the bond issue of $330,000 proposed to be issued by said board of drainage commissioners of Carteret County Drainage District, No. 1, for the purposes set out and specified in this controversy submitted without action, is a legitimate and proper exercise of this power by the said board of drainage commissioners, and that the said bonds, when so issued, will be valid and will constitute a first and paramount lien on all the lands within the district, subject only to State and county taxes, as now provided by law, prior to the lien of any mortgage or deed of trust now and heretofore existing under the lands in said district.
"It is further ordered and decreed that the defendant, board of drainage commissioners of Carteret County Drainage District No. 1, pay the costs of this proceeding, to be taxed by the clerk.
 JOHN H. KERR, Judge Presiding.
Defendant appealed.
There are three questions presented in this appeal:
1. Is the board of drainage commissioners of Carteret County Drainage District No. 1 authorized and required to reimburse plaintiff for the moneys advanced and work done by plaintiff ($62,645.37), and to levy and collect assessments on the lands in said district to that end? Or does the fact that compensation was not claimed by plaintiff for existing canals and drainways, etc., and that damages were not assessed therefor, under section 11 of the Act of 1909, with subsequent confirmation of the final report of the viewers, estop plaintiff as res judicata?
2. Will the delivery of bonds to the amount of $62,645.37, par value, to plaintiff, for such purpose, out of a total issue of $330,000 of drainage bonds, in any way affect or prejudice the validity of said issue, or of any of the bonds of said issue?
3. Will the bonds of the district, to the full amount of $330,000 issued as proposed, constitute a first and paramount lien on all the lands within the district, subject only to State and county taxes (as provided by the North Carolina Drainage Law), notwithstanding that bondholders, mortgagees, or trustees, relying upon liens subsisting prior to the issuance of said bonds, are not made parties to the proceedings?
We are of opinion that each one of these questions has been correctly decided by his Honor in his judgment in this case, and that they need no further discussion on our part. A reference to the authorities is sufficient. Sanderlin v. Lukens, 152 N.C. 738; Newby v. Drainage Dist.,163 N.C. 24; Shelton v. White, 163 N.C. 90; In re Big Cold Water D. D.,162 N.C. 127; Banks v. Lane, 170 N.C. 14; Banks v. Lane, 171 N.C. 505;Comrs. v. Webb, 160 N.C. 594.
The drainage law expressly provides for preliminary investigations, and for the employment and payment of engineers. Laws 1909, ch. 442, sec. 2; Laws 1911, ch. 67, sec. 1; Laws 1917, ch. 152.
It is provided expressly that "after the district shall have been established, and the board of drainage commissioners appointed, it shall be the duty of the board of drainage commissioners to refund to each of the petitioners the amount so paid by them as above provided, out of the first moneys which shall come into the hands of said board from the sale of bonds or otherwise, and the same shall be included in ascertaining the total cost of improvement.
The fact that when damages were assessed by the engineer and viewers under section 11, chapter 442, Act 1909, the plaintiff made no claim, and that no damages were assessed by way of compensation for the ditches and canals constructed by the plaintiff, does not *Page 717 
estop the plaintiff from now presenting the claim for such compensation. The viewers themselves recommended in their final report that this work be availed of by the district, and that (668) compensation therefor be made to the plaintiff. This final report of the viewers was confirmed by the court. It follows, necessarily, that if this recommendation was incorporated in the final report, and this final report was confirmed by the court, plaintiff's right to compensation for these ditches was determined by the court, and defendant's duty and authority to pay such compensation was decreed.
As declared by Mr. Justice Hoke in Griffin v. Comrs., 169 N.C. 646: "This final report of the board of viewers is the controlling chart by which the drainage commissioners are to be guided in constructing the work and making out the assessment rolls under the law."
That the bonds, when issued, constituted a first and paramount lien on all the lands within the district, subject only to State and county taxes, has been held by this Court in Banks v. Lane, 170 N.C. 14; Drainage Comrs.v. Farm Asso., 165 N.C. 697. Fitzpatrick v. Botheras (Iowa), 25 Ann. Cas. 534, notes p. 536; Morey Eng. and C. Co. v. St. L. A. I. R. Co., 28 Ann. Cas. 1200, notes 1210.
Affirmed.