## 12348

### DILLON CATFISH DRAINAGE DISTRICT v. BANK OF DILLON

(141 S. E., 274)

1. DRAINS—LEGISLATURE MAY ESTABLISH SPECIAL TAXING DISTRICTS, NOT MENTIONED IN CONSTITUTION, FOR PURPOSE OF LOCAL IMPROVEMENTS, SUCH AS DRAINS, AND LEVY TAXES OR ASSESSMENTS ON BENEFITED PROPERTY THEREIN.—Legislature may establish political subdivisions, such as special taxing districts, in addition to those mentioned in Constitution, for purpose of local improvements, such as drainage systems, and levy taxes or assessments on benefited property in such districts to pay therefor.

NOTE: Generally as to procedure for the establishment of drains and sewers, see annotation in 60 L. R. A., 161; 9 R. C. L., pages 619, 620; 2 R. C. L. Supp., 844.

2. Constitutional Law—Legislature May Permit Court to Declare Drainage District Duly Incorporated, Though Legislative Power as Such Cannot be Delegated (Civ. Code 1922, §§ 3211–3264).—While legislative power as such cannot be delegated, Legislature having passed general law (Civ. Code 1922, §§ 3211–3264), providing all conditions for incorporation of drainage district, could permit Court to declare conditions complied with and district duly incorporated.

3. Drains—Legislature May Establish Drainage Districts as Political Divisions of State for Convenient Accomplishment of Important Governmental Function (Const. Amend. 1901 [see Laws 1901, p. 615]; Civ. Code 1922, §§ 3211–3264).—Legislature, independently of constitutional amendment of 1901 (see Laws 1901, p. 615), has power to establish drainage districts, directly or indirectly, and constitute them political subdivisions of State for convenient accomplishment of important governmental function, as by enactment of Civ. Code 1922, §§ 3211–3264.

4. Drains—Legislature May Levy Drainage Assessment on All Property of District According to Assessed Value or Tax According to Assessed Value or Tax According to Acreage or Location.—Legislature has authority to levy a drainage assessment on all the property of a district at a uniform rate according to its assessed value or a tax according to acreage or location.

5. Drains—Drainage Assessments Against All Property Benefited in Proportion to Estimated Benefits May be Made, Though Exceeding Such Benefits.—In absence of arbitrary action, drainage assessments on all property benefited in proportion to estimated benefits, as fixed by Board of Appraisers, may be made, even though they exceed estimated benefits.

6. Drains—Statute Authorizing Creation of Drainage District Held to Provide for Public Corporation to Perform "Governmental Function" (Civ. Code 1922, §§ 3211–3264).—Civ. Code 1922, §§ 3211–3264, authorizing creation of drainage district, *held* to provide for public corporation to promote agriculture, public health, convenience, etc., which is a well-recognized "governmental function."

7. Drains—Different Sections of Act Authorizing Creation of Drainage District Must be Harmonized, if Possible, and Actual Intention Ascertained in Determining Manner or Means of Payment for Improvements (Civ. Code 1922, §§ 3211, 3227, 3232, 3233, 3250, 3260).—Civ. Code 1922, §§ 3211, 3227, 3232, 3233, 3250, 3260, must be made to harmonize, if possible, and actual intention of

lawmaking body arrived at, in determining manner or means of payment for improvements by drainage district created under such Act.

8. DRAINS—DRAINAGE DISTRICT COMMISSIONERS HELD AUTHORIZED TO ISSUE BONDS, CONSTITUTING PRIMARY OBLIGATION OF DISTRICT, AND LEVY TAXES ON ALL BENEFITTED PROPERTY FOR PAYMENT THEREOF WITH INTEREST, THOUGH EVENTUALLY EXCEEDING BENEFITS (CIV. CODE 1922, §§ 3211, 3227, 3232, 3233, 3250, 3260).—Civ. Code 1922, §§ 3211, 3227, 3232, 3233, 3250, 3260, *held* to authorize commissioners of drainage district, created under the Act to issue bonds constituting primary obligation of district and levy necessary taxes on all benefited property in district for payment thereof with interest, though eventually exceeding estimated benefits.

Before MANN, J., Dillon, November, 1927. Affirmed.

Action by the Dillon Catfish Drainage District against the Bank of Dillon. Decree for plaintiff, and defendant appeals.

The decree of Judge Mann follows:

The above-entitled matter came on to be heard by me at my Chambers at ——— on the ——— day of November, 1927. There are no issues of fact involved and by consent of counsel the issues raised were to be determined by me upon the pleadings.

The plaintiff is a drainage corporation created under the provisions of Sections 3211 to 3264, both inclusive, of Volume 3 of the Code of Laws of the State of 1922. It is admitted that a petition was duly filed as provided by Statute; that hearings were had, and it was found by the Court of Common Pleas that the district should be incorporated and a decree to that effect was duly made. Commissioners have been elected, an engineer for the district has been employed, the engineer has made his surveys and his proposed plan of drainage, has estimated the costs and expenses of carrying out same, and his proposed plan and estimate have been duly adopted by the commissioners as the "plan of reclamation" for the district. Appraisers as required by Statute have been appointed by the Court and they have made their return assessing benefits and finding that all lands in the

district will be benefited by the proposed drainage system.
Upon the coming in of the appraisers' report notice of the
hearing thereon was duly published and numerous excep-
tions were filed thereto, which, however, were subsequently
withdrawn. According to this report benefits were assessed
at $163,153.92. The estimated cost of the plan of reclama-
tion was $58,326.58. It was therefore found by the Court
that the cost did not exceed the benefits and in August, 1927,
the Court duly filed its decree approving and confirming the
appraisers' report and authorizing the commissioners to pro-
ceed with the work. Proper assessment rolls as provided by
Statute were thereupon prepared and a resolution was passed
providing for the issuance of bonds not to exceed the sum
of $60,000. The sale of the bonds was duly advertised and
on the 1st day of October, 1927, the Bank of Dillon entered
into a contract with the plaintiff to purchase the said bonds.

A copy of the contract is attached to the complaint. Ac-
cording to its terms the defendant agreed to purchase $60,-
000 serial bonds of the district dated November 1st and to
bear interest at the rate of 6 per cent. per annum, payable
semiannually on May and November 1, 1928, and on the
same date thereafter until the maturity of the bonds. One-
twentieth of the bonds were to be due and payable on No-
vember 1, 1932, and a like amount in each year thereafter up
to and including 1952. The bank agreed to pay $60,000 for
the bonds. It was further agreed that the plaintiff would
furnish a transcript of the proceedings leading up to the
issuance of the bonds and the commissioners expressly guar-
anteed that the *bonds would be a primary obligation of the
district and that all lands therein would be responsible for
the payment of the bonds.* Plaintiff in due time attempted
performance of its part of the contract, tendered a transcript
as it had agreed to do, but defendant refused to comply and
accept the bonds on the ground that *they did not constitute
a primary obligation of the district and that the lands in the*

*district would only be responsible to the extent of the assessed benefits.* This action was thereupon instituted to require the defendant to accept the bonds in acordance with its contract.

The real issue as made by the pleadings is that above referred to, viz.: Do the bonds tendered to the defendant by the plaintiff constitute a primary obligation of the district and to what extent are the lands embraced within the district responsible for the payment of the bonds? The determination of this major issue involves a number of lesser questions, which may be stated as follows:

First. May the Legislature carve out special taxing districts and charge the costs of local improvements, in whole or in part, upon the property benefited in such district?

Second. If the Legislature may create such district, can it delegate the power to the Court of Common Pleas upon petition to organize and incorporate such district?

Third. Can a drainage district be so organized and incorporated and as such be constituted a political subdivision of the State for the accomplishment of defined governmental powers?

Fourth. If so, can taxes or assessments be levied against the property benefited in the district in excess of the estimated benefits?

Fifth. Has the Legislature by the act in question authorized the commissioners to issue bonds which would be a primary obligation of the district and empowered them to levy such taxes as might be necessary to pay the bonds, even though such taxes might eventually prove to be in excess of estimated benefits?

The first question is settled by the decision of the Supreme Court in the recent case of *Evans v. Beattie,* 137 S. C., 496; 135 S. E., 538. In that case, after full consideration, it was held that the Constitution is not a grant of power, but a limitation on the Legislature, and, it not being prohibited to do it, that body might establish addi-

tional political subdivisions to those mentioned in the Constitution for the purpose of local improvements and levy taxes or assesments to pay therefor.

Can such power be delegated to the Court? It is well recognized that legislative power as such cannot be delegated, but where, as in the act now in question, the Legislature has passed a general law providing all of the conditions under which a drainage district might be incorporated, it is clearly within its power to permit the Court to judicially declare the conditions complied with and issue its decree declaring it duly incorporated. There is no difference in principle in permitting such determination by the Court and in permitting the secretary of State to charter private or municipal corporations under general laws, a power no longer questioned. It has been said:

"With the growing complexity of modern life, the multiplication of subjects of governmental regulation, the increased difficulty of administering the laws, there is a constantly growing tendency towards the delegation of greater powers by the Legislature." 12 C. J., 839.

In the case of *Houck v. Drainage District,* 239 U. S., 264; 36 S. Ct., 61; 60 L. Ed., 274, it is held in connection with the establishment of a drainage district:

"It is apparent that when the district was duly organized it had the same footing as if it had been created by the Legislature directly; and if the Legislature could have established this district by direct act, and then constitutionally imposed upon the lands within the district the ratable tax in question to pay the expenses of organization and for preliminary work, it cannot be doubted that the Legislature had power to impose the same tax upon the district as organized under the judgment of the Court."

In Dillon on Municipal Corporations (5th Ed.), § 1436:

"As a result of the decisions of the United States Supreme Court, it may be regarded as definitely settled that the

Legislature of a State may create or authorize the creation of special taxing districts and charge the cost of a local improvement, in whole or in part, upon the property in such districts according to valuation or superficial area or frontage, without violating the Fourteenth Amendment to the Federal Constitution."

Many other authorities might be cited sustaining the right being considered. Certainly, by implication the case of *Evans v. Beattie, supra,* recognizes such right on the part of the Legislature. The second question is therefore answered in the affirmative.

Coming then to the third question, the amendment to the Constitution in 1901 (see Laws 1901, p. 615) declares that the Legislature shall provide by law for condemnation of lands necessary for proper drainage of swamp and lowlands of the State and provide for the equitable assessment of lands so drained. Almost universally the reclamation of lands is regarded as one in which the public has an interest. The general prosperity of the State, frequently its health and general welfare, are greatly affected by such reclamation. Recognizing this, many of the States have passed general drainage and irrigation laws, and the Federal Government has spent millions of dollars on such undertakings. Just at present much consideration is being given to a comprehensive program for protection in the Mississippi River Basin. In recent years, especially, the matter of drainage on a large scale has come to be regarded as of serious import and a matter in which the government is vitally interested. With the increase of population attention will be more and more directed to such endeavor and drainage as a function of the State will be more clearly recognized.

A political division of a State has been defined to be a division "formed for the more effectual or convenient exercise of political power within the" political "localities."

*State v. Englewood Drainage District,* 41 N. J. Law, 154. Road districts and bridge districts are held by our Court to be such political subdivisions. *Evans v. Beattie, supra.* School districts are so designated by the Constitution. A township has been declared to be such political corporation with power to build a hospital and tax its citizens therefor. *Battle v. Willcox,* 128 S. C., 500; 122 S. E., 516. If road building, education, and preservation of health are functions of government, on what theory can a distinction be made as to reclamation or improvement of large bodies of land which provide homes for its citizens, increases the wealth of the State, and, in many instances, directly promotes the health of great numbers of its people? There would seem to be no ground for such distinction and the Court is of the view that, even if there had been no constitutional amendment, the Legislature had power to establish, either directly or indirectly, drainage districts and constitute them political divisions of the State for the convenient accomplishment of what must be regarded as an important governmental function. *Evans v. Beattie, supra; Houck v. Little River Drainage District,* 239 U. S., 254; 36 S. Ct., 58; 60 L. Ed., 273; *Tide Water Co. v. Coster,* 18 N. J. Eq., 518; 90 Am. Dec., 634; 19 C. J., 614.

4    Conceding that the district may be established and a plan of reclamation adopted, how are the costs of such improvements to be met? Are the charges that may be made against any particular piece of property in the district limited within the amount assessed as benefits? There is a line of cases which seems to so hold. 19 C. J., 731. A distinction is made where the State is the sole actor and where the district is established upon petition of the landowners. *Tide Water Co. v. Coster, supra.* The power must depend upon the terms of the act, for it is well recognized that the Legislature has authority to levy a drainage assessment upon all of the property of a district at a uniform rate

according to its assessed value, or a tax according to acreage or location. 19 C. J., 732.

In the case of *Houck v. Drainage District, supra,* where the contention was made that a flat assessment of 25 cents an acre exceeded benefits and had the effect of taking property without due process of law, the United States Supreme Court said:

"The power of segregation for taxing purposes has everyday illustration in the experiences of local communities, the members of which, by reason of their membership, or the owners of property within the bounds of the political subdivision, are compelled to bear the burdens both of the successes and of the failures of local administration. When local improvements may be deemed to result in special benefits, a further classification may be made and special assessments imposed accordingly; but even in such case there is no requirement of the Federal Constitution that for every payment there must be an equal benefit. The State, in its discretion, may lay such assessments in proportion to position, frontage, area, market value, or *to benefits estimated by commissioners.* [Citing numerous authorities.] And, as we have said, unless the exaction is a flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property, it cannot be maintained that the State has exceeded its taxing power."

In *Evans v. Beattie, supra,* the following language from *Kansas City Southern Railway Co. v. Road Improvement District,* 266 U. S., 386; 45 S. Ct., 139; 69 L. Ed., 355, is quoted with approval:

"By a long line of decisions in this Court it has been settled that, where the State Constitution, as construed by the State Court of last resort, does not provide otherwise, the Legislature of a State may require that the cost of a local public improvement, such as the construction or reconstruction of a public road, be distributed over the lands partic-

ularly benefited and charged against them according to their value, their area, or the benefits which they will receive; may itself determine what lands will be benefited and in what proportions they will share in the benefits.   *   *   * Only where the legislative determination is palpably arbitrary, and therefore a plain abuse of power, can it be said to offend the due process of law clause of the Fourteenth Amendment."

This principle is clearly sustained in the *Evans case.* So far as power is concerned, there is no difference in principle between this case and that. In the *Evans case* all property was taxed and all was by the Legislature held to be benefited. If, from an investigation of the drainage act we find that all property benefited is to be taxed and the benefits are to be fixed by a board of appraisers, the tax or assessment to be levied in proportion to the estimated benefits, the conclusion would seem to necessarily follow that the principle of the *Evans case* applies, and, in the absence of arbitrary action, assessments may be made even though they exceed estimated benefits.

We come then to a consideration of the act itself. From an investigation of it the purpose and intent of the Legislature must be ascertained. Does an analysis of it show that the Legislature intended to constitute a political subdivision of the State for the purpose of performing a governmental act? Under the act districts may be formed and lands reclaimed "for sanitary or agricultural purposes or when the same may be conducive to public health, convenience or welfare, or of public utility or benefit." Provision is made for filing petitions designating the territory to be embraced and for hearings and proceedings leading to incorporation. If the drainage district is approved by the Court, the decree shall declare it a "public corporation of the State." Clearly, then, it was the intention of the Legislature to provide a public corporation for the promotion

of agriculture, the public health, convenience, etc., a well-recognized governmental function.

In what manner or by what means was payment to 7, 8 be made for the improvements? Section 1 (Civil Code, Vol. 3, § 3211), among other things, provides: "Said petition shall further state that the owners of the lands within said district whose names are subscribed to said petition are willing to and do obligate and bind the lands owned by them situated in the proposed drainage district to pay the tax or taxes which may be assessed against their respective lands to pay the expense of organizing and of making and maintaining the improvements that may be necessary to effect the reclamation of said lands, so formed into a drainage district, and to drain and protect the same from the effects of water."

Section 17 (Code, § 3227), provides:

"The said tax shall be apportioned to and levied on each tract of land in said district in proportion to the benefits assessed and not in excess thereof, and in case bonds are issued as provided hereinafter, then the amount of the interest (as estimated by said board of supervisors) which will accrue on said bonds shall be included and added to the said tax, but the interest to accrue on account of the issuing of said bonds shall not be construed as a part of the costs of construction in determining whether or not the expenses and costs of making said improvements are or are not equal to or in excess of the benefits assessed."

Section 22 (Code, § 3232), declares:

"All drainage taxes provided for in this article, together with all penalties for default in payment of the same, all costs in collecting the same, including a reasonable attorney's fee fixed by the Court and taxed as costs in the action brought to enforce payment, shall, from the date of assessment thereof until paid, constitute a lien, to which only the lien of the State for general state, county, school and road taxes

shall be paramount upon all lands against which such taxes shall be levied as is provided in this article."

Section 23 (Code, § 3233):

"All sales of real estate made under this Section shall be by the sheriff, who shall execute a deed or deeds to the purchaser or purchasers for the property sold. All deeds executed and delivered pursuant to this article shall have the same probative force as deeds executed under judicial sales in other civil actions. In case said district shall fail to commence suit within ninety days after the taxes have become delinquent, the holder of any bond or bonds * * * shall have the right to bring suit for the collection of the delinquent taxes. * * * The title acquired through any sale of lands under the aforesaid proceedings shall be subject to the lien of all subsequent annual installments of drainage tax."

Section 40 (Code, § 3250), among other things provides:

"It shall be the duty of said board of supervisors in making the annual tax levy, as heretofore provided, to take into account the maturing bonds and interest on all bonds, and to make provision in advance for the payment thereof. In case the proceeds of the original tax levy made under the provisions of Section 17 of this article are not sufficient to pay the principal and interest on all bonds issued, then the board of supervisors shall make such additional levy or levies upon benefits assessed as are necessary for this purpose, and under no circumstances shall any tax levies be made that will in any manner or to any extent impair the security of said bonds or the fund available for the payment of the principal and interest of the same."

Section 50 (Code, § 3260), declares:

"All bonds issued by any board of supervisors under the provisions of this article shall be secured by a lien on all lands and other property benefited in the district, and the board of supervisors shall see to it that a tax is levied an-

nually and collected under the provisions of this article, so long as it may be necessary to pay any bond issue or obligation contracted under its authority; and the making of said assessment and collection may be enforced by mandamus."

Under these provisions what is the nature of the so-called "bonds" and how are they secured? Section 17 expressly says that the tax levy shall be in proportion to the benefits assessed and not in excess thereof. The same *section provides that interest on bonds shall not be considered a part of the costs of the plan of reclamation; but the Court may establish a district if the assessed benefits exceed the estimated costs. It may occur then that a district will be established where the costs, plus the interest on the bonds, will exceed assessed benefits. Section 40 provides that additional levies may be made on benefits to pay bonds and interest, but it is easily conceivable that, if in the beginning the costs and interest on bonds exceeded the estimated benefits, there would be no benefits against which additional levies could be made. Section 50 makes the bonds, with interest thereon, a lien on all the lands benefited in the district, and requires levies to be made on such lands and property benefited so long as any bonds or interest may be outstanding.

All of these sections must be made to harmonize, if possible, and the actual intention of the lawmaking body arrived at. Two things were necessarily to be considered: The landowner must be protected; and the reclamation brought about, if advantageous. Two provisions are inserted to accomplish the first purpose: If the estimated costs of the plan of reclamation exceed the estimated benefits, then the Court shall dismiss the proceedings and declare the organization of the district improper; if, however, the opposite appears and the benefits exceed the costs, then the district may be established. Interest on bonds, which may amount to approximately the same sum as the principal, is not to be considered in arriving at costs. Section 17. But in making

assessments to cover costs such assessments cannot exceed the estimated benefits. But the interest must be taken care of. Bonds may be sold to an extent of 90 per cent. of the costs. Section 40. To hold that interest could only be paid out of the estimated benefits and that all cost including interest must be limited by benefits would be in direct contravention of the language and purport of the act. That such limitation was not intended Section 50 seems to make clear. The district cannot be organized if the costs exceed the benefits. Taxes cannot be levied in excess of the benefits, but may be levied to the extent of benefits. Costs may be almost as great as benefits and bonds may be issued for 90 per cent. of that amount. Under such circumstances there could possibly be no advantageous sale of bonds. Therefore the Legislature provided that, when the bonds were sold, all land and property in the district benefited should be responsible for the payment of them, with interest. This could work no hardship, for the reason that the amount of bonds being limited and the interest thereon fixed no arbitrary taking of property could result. This construction seems to be reasonable, harmonizes all of the provisions of the act, makes the drainage bonds salable, and should hence, in my judgment, be adopted.

It is therefore ordered, adjudged, and decreed that the said bonds involved in this action constitute a primary obligation of the plaintiff district, and that all of the property in said district benefited as a result of the establishment of the plan of reclamation is responsible for the payment thereof, together with interest thereon; that the defendant, the Bank of Dillon, be required to accept the bonds and pay therefor in accord with its contract, a copy of which is attached to the complaint in this action.

*Messrs. Lide & McCandlish,* for appellant, cite: *Legislature has power to constitute a drainage district a political subdivision:* 137 S. C., 496. *A drainage district, formed*

*pursuant to drainage laws of this State, held not to be a political subdivision within the meaning of the Constitution:* 103 S. C., 191. *Will bonds constitute a primary obligation of the district:* Secs. 3260, 3227, 3258, Code. *When those benefited are required to pay in excess of benefits received, then unlawful taking of property results:* 19 C. J., 731; 90 Am. Dec., 641; 24 A. L. R., 934; 2 A. L. R., 609; 9 A. L. R., 590; 43 L. Ed., 443. *Special assessments are a species of taxation and the Legislature may provide that they may be apportioned to the property benefited according to the foot, area, or value:* 31 L. Ed., 763; 45 L. Ed., 879; 60 L. Ed., 266; Id., 624; 19 C. J., 732. *In the absence of action that is clearly arbitrary on the part of the Legislature the Court will not attempt to go behind its findings:* 60 L. Ed., 523.

*Messrs. Gibson & Muller,* for respondent, cite: *Issuance of bonds creates a primary obligation:* Secs. 3250, 3260, Code; 72 S. E., 996; 5 A. & E. Ann. Cas., 196; 42 A. L. R., 1027; 40 A. L. R., 1344; 208 Pac., 27; 228 Pac., 236; 42 A. L. R., 1187; 248 Fed., 269. *Court has no right to go behind the findings of the Legislature:* 41 L. Ed., 369; 60 L. Ed., 273; 69 L. Ed., 355; 137 S. C., 496. *Distinction between the taking of property for a public purpose and the taking without due process of law:* 2 A. L. R., 609; 93 N. E., 228; 46 N. E., 437; 72 N. W., 1091; 66 S. W., 163. *Legislative power to assess property:* 43 L. Ed., 443; 31 L. Ed., 763; 137 S. C., 496.

January 9, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The decree of his Honor, Judge M. M. Mann, which will be reported, states fully the facts of this cause, and the conclusions reached by him are satisfactory to this Court.

It is therefore ordered that the decree appealed from be and the same is hereby affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTH-
RAN, STABLER, and CARTER concur.