66 N.J. Super. 512 (1961)
169 A.2d 517
MARCO MARINO, CLERK OF THE TOWNSHIP OF SADDLE BROOK, PLAINTIFF,
v.
EDWIN ZDANOWICA, MAYOR, JOHN J. JORDAN, RICHARD C. KELLY, BENJAMIN WALENCZYK AND BEN S. ELMO, MEMBERS OF THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF SADDLE BROOK, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 27, 1961.
*513 Mr. Hubert J. Franklin, attorney for plaintiff.
Mr. Carmen M. Belli, attorney for defendants.
SCHNEIDER, J.C.C.
Defendants make a motion to dismiss or for summary judgment in this matter. The suit is by the township clerk against the governing body, seeking a declaratory judgment. On February 7, 1961 the governing body passed finally an ordinance to create the Saddle Brook Municipal Utilities Authority and the mayor approved and signed the same. Plaintiff alleges that on February 8, 1961 a petition was filed with the plaintiff by taxpayers of the municipality representing valuation in excess of the statutory requirements, protesting passage of the ordinance and the indebtedness incurred thereunder and requesting a referendum. The clerk has determined that the petitions are in order and is prepared to take the necessary steps to set up the referendum.
On February 10, 1961 the plaintiff received a letter signed by the mayor and two members of the township committee requiring the clerk to file a certified copy of the ordinance in the office of the Secretary of State. Under the statute L. 1957, c. 183, N.J.S.A. 40:14B-1 et seq., the filing of the ordinance constitutes the establishment of the Municipal Utilities Authority. The defendants contend that petitions are of no effect and should be disregarded by the clerk. They contend that the clerk is obligated to file the ordinance.
The clerk seeks instructions, as he wishes to do the correct thing under the law.
The ordinance merely creates an authority under the above statute, provides for compensation of the five members of the authority, and directs the filing of the ordinance by the township clerk with the Secretary of State. From statements *514 made in court it appears that it is the intention of the township committee to turn over to the authority the existing municipal water and sewer systems of the township, in which revenues are collected by the municipality. Part of the community has sewers paid for by assessments for benefits, and the objections appear to be that by having the authority build the balance the original owners will pay their own and part of the other residents' bills. It also appears that no provision has been made for compensation to the township for assets acquired by the authority, and that a complaint has been filed but not yet served, attacking the constitutionality of the ordinance and legislative act. These facts play no part in the decision but are set forth for better understanding the factual background.
Defendants contend that the complaint fails to set forth a claim upon which relief can be granted and that there is no genuine issue as to any material fact. Plaintiff has obtained temporary restraint by consent to prevent the taking of disciplinary action against him for failure to follow instructions pending the outcome of this case, and seeks a continuation of the restraint.
There is no dispute as to the proper number of names and amounts of assessed valuation as set forth in the petition. Defendant contends there is no statute permitting the referendum, and the referendum provisions of the Home Rule Act in a situation where there is an expenditure of funds or an improvement project do not apply in this case.
The statutes permitting a referendum under the Home Rule Act are R.S. 40:49-9 and R.S. 40:49-27 which are as follows:

R.S. 40:49-9
"Any ordinance authorizing any improvement shall become operative ten days after the publication thereof after its final passage, unless within said ten days a protest against making the improvement shall be filed in the office of the municipal clerk signed by taxpayers representing ten per cent in amount of the assessed valuation of such municipality, whose names appear on the last preceding assessment roll thereof, in which case the ordinance shall *515 remain inoperative until a proposition for the ratification thereof shall be adopted, at an election to be held for that purpose, by a majority of the qualified voters of the municipality voting on the proposition. The certificate of the municipal clerk filed in his office as to the filing or sufficiency of any protest shall be conclusive for the purpose of this section.
At least ten days before the election notice thereof shall be published once in a newspaper published in the municipality, or if there be no such newspaper, then in a newspaper published in the county and circulating in the municipality."
R.S. 40:49-27 provides as follows:
"Any ordinance authorizing the incurring of any indebtedness, except for current expenses shall become operative ten days after the publication thereof after its final passage, unless within said ten days a protest against the incurring of such indebtedness shall be filed in the office of the municipal clerk signed by taxpayers representing ten per cent in amount of the assessed valuation of such municipality, whose names appear on the last preceding assessment roll thereof, in which case such ordinance shall remain inoperative until a proposition for the ratification thereof shall be adopted, at an election to be held for that purpose, by a majority of the qualified voters of the municipality voting on the proposition, subject to the provisions of sections 40:49-10 to 40:49-12 of this title.
The certificate of the clerk of the municipality filed in his office as to the filing or sufficiency of any protest shall be conclusive for the purposes of this section.
At least ten days before any such election, notice thereof shall be published once in a newspaper published in the municipality, or if there be no such newspaper, then in a newspaper published in the county and circulating in the municipality."
The sole question is whether the referendum may be granted under the above sections; i.e., is the creation of the municipal authority an improvement or an indebtedness under the law so as to permit a referendum?
Under the provisions of N.J.S.A. 40:14B-20, once the authority is created, the Home Rule Act will no longer apply and the authority will become a political subdivision of the State. It will be independent of the municipal corporation. This becomes important because the filing of the ordinance in the office of the Secretary of State will constitute *516 the authority and the referendum provisions will no longer apply. Thus, if there is a right to a referendum in our case, the ordinance should not be filed pending the outcome of the referendum.
The statute further provides for a liberal construction to effectuate the legislative intent. The statute (N.J.S.A. 40:14B-33) also provides that the bonds or obligations issued by the municipal authority shall not become the debt or liability of the State or county or municipality. Counsel contends that this excludes any municipal indebtedness so as to give right to a referendum, and further contends that the improvements made are not the improvements or obligations of the municipality under the other municipal referendum section.
The issue is a very narrow one. We are not testing the constitutionality of the Municipal Authorities Act. The sole issue lies in the words "indebtedness" and "improvement." It is not for the court to question the acts of the Legislature or the wisdom of the Saddle Brook governing body.
The Municipal Utilities Authorities Law (N.J.S.A. 40:14B) declares it to be in the public interest and policy of the State to foster and promote by all reasonable means the provision and distribution of an adequate water supply for public and private use in counties and municipalities, the relief of waters in or bordering the State from pollution, and the reduction and abatement of the menace to public health resulting from pollution. It authorizes counties and municipalities by means of a municipal authority, to acquire, construct, maintain, operate and improve works for the accumulation, supply and distribution of water and works for the collection, treatment, purification and disposal of sewage or other wastes.
The act authorizes service charges to be collected from occupants and owners of property for direct or indirect connection with and the use of the products or services of such works, and provides for collection of said charges. It *517 creates authorities with full power and responsibility for such purposes. It sets forth provisions for the issuance of bonds. It sets up a body to manage the authority.
The governing body may dissolve the authority by ordinance. The authority may acquire by purchase, gift, condemnation or lease, and notwithstanding provisions of any charter, ordinance or resolution of the municipality may use such existing facilities as in the judgment of the authority will provide effective and satisfactory methods to promote its purposes.
Any local unit shall have power, in the discretion of the governing body, to appropriate money for the purposes of the municipal authority, and to loan or donate money to it. Liens for charges may be filed in the tax office and included in tax searches. The municipality is empowered, without referendum, to sell, grant, lend or convey, lease or use any real or personal property with or without consideration. The authority is exempt from all taxation.
There is a provision for liberal construction, and the authority will not be subject to Titles 40 or 50 of the Revised Statutes.
In New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949), there was a complaint for declaratory judgment to determine the constitutionality of the Turnpike Authority. As in our case, the bonds to be issued would not be a liability of nor pledge the credit of the State. The State Highway Department was authorized in its discretion to expend out of funds available the necessary money for preliminary expenses, with reimbursement by the Authority.
The 1947 Constitution (Art. VIII, Sec. II, par. 3 provides that the Legislature shall not create in any fiscal year in any manner any debt or liability which, together with previously incurred debts or liabilities, exceeds 1% of the total amount of appropriations for the year under the general appropriations law, unless authorized by a law for a single object or work distinctly specified therein. Such a law could not take effect unless submitted to the people at a *518 general election and approved by a majority of the voters. The bonds issued by the Authority would exceed this amount and it was never submitted to the voters.
The court held that to come under the ban of the Constitution, it must appear that the bonds will create a debt or liability of the State. It was held that the Authority did not come under the ban of the Constitution. Explicit and unambiguous language negatived the bonds' being an obligation of the State. It was charged that because the State created the Authority, the State was responsible for its debts.
Public corporations in government, though created by the State and subject to dissolution by it, are in the eyes of the law independent entities, and the State is not responsible for their debts and liabilities, whether they be municipal corporations or counties or bodies like the Port of New York Authority. The fact that members are appointed by the Governor with the advice and consent of the Senate, rather than elected by the voters, does not destroy their status as an independent corporate entity.
No appropriation was made by the Legislature to the State Turnpike Authority. Had there been, it might be illegal. The Turnpike Authority cannot blow hot or cold in the same breath; it is either autonomous or it is not. The State Highway Commissioner has no right to divert funds appropriated to the State Highway Department to render services for a project not within the scope of the duties of the Department, and section 17 of the act was declared invalid.
It is to be noted that although there were unconstitutional provisions in the act, they were considered severable and did not affect the constitutionality of the balance.
In our case the Municipal Authorities Law has many provisions which may be declared unconstitutional. There is a give-away provision of municipal assets and a provision for spending municipal money. It would appear that under the New Jersey Turnpike Authority case this might be unconstitutional. But it has already been pointed out that *519 our case deals only with the creation of an entity which had legislative approval. In De Lorenzo v. City of Hackensack, 9 N.J. 379 (1952), a municipal parking authority was created. The court held that independent authorities have been recognized as to their legal validity and constituted a proper exercise of the legislative function, while also holding that the municipality may not guarantee the bonds of the authority or give any guarantee of money.
In Santoro v. Mayor and City Council of Borough of South Plainfield, 57 N.J. Super. 307 (Law Div. 1959), a sewer authority was created. The municipality attempted to place on the ballot a non-binding referendum to determine whether the sewer authority should make certain installations of sanitary sewers. The court did not permit it because the authority alone had the power to construct, and the referendum would be for no purpose, would create confusion, and delay the plans of the sewerage authority. The mayor and council argued there was no other method available for the voters to express their views. The court stated this was a matter for the Legislature, not the courts. See also Botkin v. Mayor and Borough Council of Borough of Westwood, 52 N.J. Super. 416 (App. Div. 1958).
In Lynch v. Borough of Edgewater, 8 N.J. 279 (1951), it was held that
"The specification of who shall benefit and under what conditions is a legislative function and we should not construe statutes any more broadly nor give them any greater effect than their language requires."
In Perry v. Borough of Deal, 103 N.J.L. 310 (Sup. Ct. 1926), affirmed 104 N.J.L. 182 (E. & A. 1927), there was an ordinance to annex to the Borough of Deal a portion of Ocean Township. A petition for a referendum was filed under the Home Rule Act and disregarded by the borough council. It was held the ordinance did not authorize any improvement or incur any indebtedness and there could be no referendum.
*520 The liberal construction in favor of municipalities in the New Jersey Constitution of 1947, and the liberal interpretation provision in our statute (Municipal Utilities Authorities Law) do not permit us to construe the mere creation of the authority as either an indebtedness or the incurring of an obligation or the creation of a municipal improvement. There is definite language to the contrary, and there can be no finding that it is actually an incurring of an obligation when the language of the statute specifically provides that the credit of the municipality may not be pledged.
McQuillin on Municipal Corporations (3d ed.), § 40.04, provides that no vote of the people at a special or general election is necessary to authorize a bond issue, unless required by Constitution or by statute or charter. The constitutional requirements of submission to qualified electors was considered not as applying to bonds issued by a specially created assessment district. Sanders v. Greater Greenville Sewer Dist., 211 S.C. 141, 44 S.E.2d 185 (Sup. Ct. 1947). The same rule was applied to a specially created auditorium district, a school district or high school district. Ashmore v. Greater Greenville Sewer Dist., 211 S.C. 77, 44 S.E.2d 88, 173 A.L.R. 397 (Sup. Ct. 1947).
Water work bonds may be issued for the construction of additions to a water works system without submission to the voters, although the municipal charter may so provide. City of Corpus Christi ex rel. Harris v. Flato, 83 S.W.2d 433 (Tex. Civ. App. 1935); see also Flottum v. City of Cumberland, 234 Wis. 654, 291 N.W. 777 (Sup. Ct. 1940).
McQuillin, in section 40.05, goes on to say:
"Under the constitutional provision in most states, it is only where the particular municipal obligation constitutes a `debt' or an `indebtedness,' that an election to secure the approval of the qualified voters is required; if the obligation does not constitute a `debt' the assent of the qualified voters is not required. Thus where improvements are to be paid from special assessments, it is not usually considered a municipal indebtedness. In other words, if the *521 obligations in question are not debts or obligations of a city, or are not `bonds' within the meaning of the constitutional requirement, no election is necessary to make them binding."
Most of these cases arise where the issuance of bonds requires a vote of the people. The finding in these cases almost always points to the fact that where the bonds are issued by "authority" type of agencies, the referendum is not required. In our case the referendum comes by statute after passage of an ordinance where there is debt or municipal improvement. The obligations of the authority and its works are not debts or improvements of the municipality and a referendum does not follow as a right.
The court feels that the creation of this authority is a very serious event in the life of this small community and should be passed on by the voters. But there is no legislative provision to that effect, and the court cannot create one. The fact that there may be unconstitutional features in the act being construed, or that the authority may have difficulty in selling its bonds, does not enter into the picture. The only question here is the creation of the entity, which can be done by legislative sanction.
The judgment may be presented, declaring that it is the duty of the township clerk to file said ordinance with the Secretary of State, as required by law. The clerk will not under said judgment be permitted to certify the referendum.